Syllabus.

## Wytheville.

## WASHINGTON-VIRGINIA RAILWAY COMPANY V. FISHER.

### June 14, 1917.

### Absent, Burks, J.

1. CROSSINGS—*Private Crossings—Liability of Railroad to Public.*—
   A crossing was constructed by a railroad company on the re-
   quest of the landowner, whose property was intersected by the
   railroad, under section 1294-b, Code of 1904, satisfactory to
   the landowner, smooth and level over its entire width and fully
   up to the average crossing. No demand was made on the
   company that it should be *forty feet* wide, and it was put in
   strictly according to the agreement.

   *Held:* That the crossing was a private one. The statute meas-
   ures the extent and obligation of the railroad with respect to
   it. The duty is owing to the landowner, and when that duty
   has been discharged according to statutory requirement and
   is satisfactory to him, no one else can be heard to complain.
   The general public are not interested. The rights and reme-
   dies provided by section 1294-b are personal to the landowner,
   and if the public wish to acquire other or greater rights their
   remedy is under different statutes and by an essentially dif-
   ferent procedure. If then a person other than the owner, or
   some one in privity with him, for his own convenience, elects
   to use such crossing and mishap befalls him, the company, in
   the absence of some further intervention on its part that
   proximately contributes to the accident, cannot be held liable
   therefor.

2. STREETS AND HIGHWAYS—*Acknowledgment and Recordation of
   Map—Acceptance.*—Upon the acknowledgment and recorda-
   tion of a plat, the "Map Act" (Code 1904, section 2510-a),
   creates a public easement or right of passage over such por-
   tions of the premises as are set apart for streets; yet such
   streets do not become "county roads or highways" unless and
   until they are accepted or established as such by the county
   authorities. It affirmatively appears that in the instant case
   the street in question has never been so accepted or estab-

lished. Consequently, it is not "a county road or highway" in contemplation of clauses 38 and 39 of section 1294-d of Code of 1904.

3. Crossings—*Duty of Railroad*—*"County Road or Highway."*— The word "county," as used in section 1294-d, clauses 38 and 39, Code of 1904, setting forth the duty of a railroad, crossing a "county road or highway," is used in the sense of an adjective and modifies or limits both "road" and "highway;" and from their collocation those words are the equivalent of "county road or county highway;" and a road dedicated by a plat to the public, but never accepted as such by the county authorities, is not a "county road or highway," as those terms are used in the statute.

Error to a judgment of the Circuit Court of Alexandria county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*John S. Barbour* and *Moore, Keith, McCandlish & Hall,* for the plaintiff in error.

*Crandall Mackey* and *F. S. Key-Smith,* for the defendant in error.

Whittle, P., delivered the opinion of the court.

This action was brought by the defendant in error, Clara G. Fisher, against the Washington-Virginia Railway Company to recover damages for personal injuries ascribed to its negligence. Judgment was rendered for the plaintiff upon a demurrer to the evidence.

The essential facts, about which there is no ground for controversy, are these: The defendant owns and operates an electric trolley line of railway from Washington, D. C., to Fairfax, Virginia, a distance of about twenty miles. In

1895, it acquired by purchase the fee simple title to the right of way through a tract of land in Alexandria county, comprising a strip of ground sixty feet in width and four hundred and twenty feet long. Within two years thereafter, the defendant had completed its railway, and has been continuously operating it to the present time. Defendant's vendors retained the ownership of the land on both sides of the right of way for several years after the railway was put in operation, but subsequently sold to others, and by successive transfers W. W. Douglass ultimately became the sole owner.

About eight years after the completion of the railway, the owners of the land at that time recorded a dedication and plat of the property on both sides of the right of way, which they designated "West Ballston Sub-division." The plat showed the lay-out of the land in lots and streets. The dedication and plat were made in pursuance of section 2510-a of the Code. The deed of dedication described the land by metes and bounds, calling specifically for the boundary lines of the.right of way strip and in terms excepted it from the operation of the dedication. Main street, one of the streets of the sub-division, was represented on the map as forty feet wide. It approaches the right of way at right angles on both sides, each section abutting on the defendant's boundary line. Two hundred and forty-seven feet west of where Main street, if extended, would cross the right of way, Church avenue, another street in the sub-division, crosses the railway for the full width of forty feet, affording a smooth and level passage and access to the defendant's station at that point. For five or six years after "West Ballston Sub-division" had been laid out there was no crossing over the defendant's right of way between the termini of Main street, and about that time Douglass, who was then the owner of the land on both sides of the railway, served a written notice on the defendant, under section 1294-b of the

Code, to compel the company to construct "a proper and suitable wagon way" from one part of his land to the other. The defendant objected to putting in the crossing at that place, because two of its trolley poles were in the way, and for the further reason that it would involve the expense of laying two lines of terra cotta pipe across the road for necessary drainage.

Douglass gives the following account of the transaction: "I stated to the railroad company that there was ample room for them to construct a crossing east of these poles without moving them, and that if they would construct the crossing there it would be satisfactory to me * * * I told them as a compromise that I would furnish the pipe, which I did, for sewerage under the road if they would construct the crossing; and under that compromise agreement the crossing was put in." This was done in the year 1910, or 1911. It was a box, grade crossing, thirteen feet wide. A box crossing is made by putting down boards parallel with the rails on each side and filling in between the boards with earth or cinders. At right angles to and between the tracks, heavy oak timbers are placed at each side of the crossing to retain the earth or cinders used in making the fill. The height of these timbers necessarily varies according to the contour of the ground; and at the crossing in question was eleven inches on the east side and four inches on the west side. The surface of the crossing for its entire width was smooth and level, with the depressions mentioned on the outer margins. Douglass testified that the crossing was fully up to the average crossing and satisfactory to him.

The plaintiff resided in "West Ballston Sub-division," and had been living within a few hundred yards of the crossing, on the north side, for eight or nine years; and was familiar with its location and character, having frequently passed over it both in the daytime and at night.

On the night of November 8, 1914, the plaintiff and her three daughters were returning home after attending services at a Presbyterian church on the south side of the railway, and while walking along the east side of the crossing in the dark, she stepped over the edge and fell, breaking one of the bones of her wrist.

Upon the foregoing summary of the facts, we are of opinion that the decision of the case depends upon the character of the crossing. If it is a private crossing, the judgment ought to be reversed; otherwise, upon a demurrer to the evidence, it should be affirmed.

The fact is not controverted that this crossing was constructed by the defendant on the request of Douglass, by authority of section 1294-b. The statute which enjoins upon the defendant the duty to supply the crossing measures the extent of the obligation with respect to it. The duty is not owing to the general public, but is limited to the land owner, and is discharged when the company provides a proper and suitable wagon way across the railroad, and afterwards keeps the way in good repair. In this instance, it was satisfactory to the land owner, and was smooth and level over the entire width and "fully up to the average crossing." Moreover, no demand was made on the company that it should be forty feet wide, and it "was put in strictly according to the agreement."

The liability of the company is coextensive with the duty, and is limited and measured by the duty. The duty is owing to the land owner, and when that duty has been discharged according to statutory requirement and is satisfactory to him, no one else can be heard to complain. The general public are not interested. They have suffered no inconvenience from the division of the land, and are neither benefited nor burdened by that event. They have no greater interest in respect to the land occupied by the crossing after the right of way has been established than they had

before. The rights and remedies provided by section 1294-b are personal to the land owner, and if the public wish to acquire other or greater rights their remedy is under different statutes and by an essentially different procedure.

If then a person other than the owner, or some one in privity with him, for his own convenience, elects to use such crossing and mishap befalls him, the company, in the absence of some further intervention on its part that proximately contributes to the accident, cannot be held liable therefor.

But it is said that the rules applicable to an ordinary private crossing do not obtain in this case because the crossing constitutes the connecting link between the termini of Main street, which by operation of section 2510-a, clause 3, became a public highway when it was dedicated and platted and recorded. It is contended that such a crossing comes within the influence and is controlled by clauses 38 and 39 of section 1294-d, which develoves upon the defendant the duty to construct a crossing coincident with Main street, which, as remarked, is forty feet wide.

It is true that upon the acknowledgment and recordation of the plat, the "Map Act" creates a public easement or right of passage over such portions of the premises as are set apart for streets; yet such streets do not become "county roads or highways" unless and until they are accepted or established as such by the county authorities; and it affirmatively appears that Main street has never been so accepted or established. Consequently, it is not "a county road or highway" in contemplation of clauses 38 and 39 of section 1294-d. *Commonwealth* v. *Kelly,* 8 Gratt. (49 Va.) 632; *Buntin* v. *City of Danville,* 93 Va. 200, 24 S. E. 830; *Gaines* v. *Merryman,* 95 Va. 660, 29 S. E. 738. It was admitted that Main street is not a "county road," because it was never accepted as such by the county authorities. Nevertheless, it was sought to be maintained that the street is a

"highway" within the meaning of the above mentioned clauses. This attempt to dissociate "highway" from "county," as the words occur in clause 38 is not justified either by grammatical construction or the underlying reason for the provision. In the sentence in which the words "every county road or highway" are found, "county," though a noun, is used in the sense of an adjective and modifies or limits both "road" and "highway;" and from their collocation those words are the equivalent of "county road or county highway." Besides, the statute requires the county to bear its due proportion of the expense of putting in crossings to which it applies; and it is unreasonable to suppose that the legislature would impose the burden on a county of providing a crossing for a highway other than a "county highway."

For these reasons, it seems clear to us that clauses 38 and 39 do not apply to this case.

The point was also stressed that these clauses, in terms exclude "electric railways." But the fact that they do not apply to the case dispenses with the necessity of deciding that question.

The decision rests upon the construction of our own statutes, and since our attention has not been drawn to any Virginia authority directly in point, and most of the citations being to outside decisions, a review of the cases would not be helpful.

For these reasons, our opinion is to reverse the judgment of the circuit court, and enter judgment for the plaintiff in error, the Washington-Virginia Railway Company, on its demurrer to the evidence.

*Reversed.*