# Walker *v.* Alabama, Tennessee & Northern Railway Co.

## *Crossing Accident.*

(Decided November 4, 1915.   70 South. 125.)

1. *Railroads; Crossing Accident; Degree of Care.*—The provisions of section 5473, Code 1907, apply only to public road crossings, and are without application in case of injury occurring at a private crossing, where, though not wrongdoers, persons using such crossing are mere licensees.

2. *Same; Private Crossing.*—Where a railroad holds out invitation to the public to cross at a particular place, it assumes the burden of using reasonable precautions to protect travelers, notwithstanding it need not exercise the statutory precautions at private crossings.

3. *Pleading; Demurrer; Inferences.*—A pleading attacked by demurrer will be construed most strongly against the pleader.

4. *Railroads; Crossing Accident; Licensee.*—An engineer in charge of a train is not bound to anticipate the presence of persons at a private crossing, and is only bound to use reasonable care to avoid injury, after discovering such a person in a position of danger.

5. *Same; Complaint.*—A complaint averring that while plaintiff's intestate was crossing defendant's railroad in a wagon at a crossing, the wagon was struck by an engine and train of cars, killing plaintiff's intestate, and that the proximate cause of intestate's death was the negligence of defendant, is sufficient to state a cause of action for failure to exercise ordinary care to avoid injury, after discovering intestate's position of peril, although the failure of complaint to allege that the crossing was public precludes any reliance on the engineer's failure to give the statutory signals.

6. *Appeal and Error; Harmless Error; Pleading.*—The sustaining of a demurrer to a count of the complaint is harmless, where the plaintiff had the full benefit of the same matters is a different count.

7. *Instructions.*—The erroneous giving of the affirmative charge for defendant as to one count of the complaint was harmless, where plaintiff had the benefit of the same matters under another count which was submitted to the jury.

8. *Railroads; Crossing Accident; Variance.*—Where the complaint averred that the crossing where the accident occurred was a public one, proof that it was a mere neighborhood crossing is a variance warranting the direction of a verdict as to such count.

9. *Same; Punitive Damages.*—Where the evidence clearly showed a bona fide attempt on the part of the engineer to avoid running down plaintiff's intestate after discovering his position of peril, the counts charging willful and wanton wrong were properly withdrawn from the jury.

[Walker v. Alabama, Tennessee &·Northern Railway Co.]

10. *Same; Contributory Negligence.*—Where the last clear chance doctrine was relied on, the contributory negligence of a traveler killed at a railroad crossing is immaterial.

11. *Evidence; Expert; Stopping Engine.*—Where it was claimed that an engineer did not take all proper precautions or possible steps to avoid running down plaintiff's intestate after discovering his peril, expert testimony as to the proper methods of stopping an engine was properly received.

APPEAL from Sumter Circuit Court.

Heard before Hon. BERNARD HARWOOD.

Action by O. M. Walker, as administratrix of the estate of J. P. Stallings, against the Alabama, Tennessee & Northern Railway. Judgment for defendant, and plaintiff appeals. Affirmed.

The first count alleges that: Defendant was operating a railroad in and through Sumter county, Ala., and in said county was a certain public road crossing known as McElroy's Mill Crossing, and plaintiff avers that on the 16th day of May, 1914, while his said intestate was crossing defendant's railroad in a wagon at said crossing, the said wagon was struck by an engine and train of cars operated by defendant, thereby so badly crushing and bruising plaintiff's intestate that he afterwards died as a result thereof. Plaintiff avers that the proximate cause of the death of his said intestate was the negligence of defendant in this, that it negligently caused him to sustain the injuries from which he afterwards died.

Count 2 is the same as count 1, with this additional averment: Plaintiff avers that the proximate cause of the death of his said intestate was the negligence of an agent or servant of defendant who had charge of the operation of said engine, and who was acting within the line and scope of his employment as such, in this, that he negligently failed to exercise reasonable care to avoid striking plaintiff's intestate after he discovered him in a position of peril on or approaching defendant's track.

The third count is the same as the second, except that it is alleged that the servant or agent willfully, wantonly, or intentionally caused plaintiff's intestate to sustain the injuries from which he afterwards died.

The first count was afterwards amended by the averment that plaintiff's intestate was not in charge or control of the said wagon in which he was riding at the time he sustained his said injuries, and said wagon was a private conveyance, and not the property of plaintiff's intestate. The second count was also later amended by adding the following averment: When plaintiff's intestate was in a position of peril on said track, or was approaching said track in dangerous proximity thereto, and plaintiff says that his said intestate was not in charge or control of the said wagon in which he was riding at the time he received his said injury, and said wagon was not the property of plaintiff's intestate. Count A is count 1 as amended, with the word "public" omitted before the word "crossing." With the same exception count B is the same as count 2 as amended. With the same exception count C is the same as count 3. The pleas of contributory negligence are very numerous, and set up in varying phraseology the failure to stop, look, and listen, and the going onto the track in close proximity to an approaching train, which could be easily seen and observed, or heard.

BONDURANT & SMITH, for appellant.

WILLIAM H. ARMBRECHT, and W. H. WHITE, for appellee.

SAYRE, J.—(1-5) Count A is identical with count 1, except that the first-named count omits the word "public" where it is used in the latter to describe the road cross-

ing at which plaintiff's intestate received the injuries which resulted in his death. The proper construction of count A, then, is that intestate was crossing defendant's railroad at a private or neighborhood crossing. On the averments of count A plaintiff's intestate, while crossing the track at that place, was not a wrongdoer, but was entitled to such consideration as the law accords to a bare licensee. The specific requirements of the statute, section 5473 of the Code, which makes it the duty of the engineer to blow the whistle or ring the bell before reaching any public road crossing, are not to be extended beyond the language of the statute, and have no operation in cases of injuries occurring at private crossings.— *Cook v. Central R. R. of Ga.,* 67 Ala. 533. Where, however, a railroad company holds out an invitation to the public to cross at a particular place, as, for example, by preparing and maintaining a crossing for the public convenience, it assumes in the operation of its trains at such place, without regard to the statute, the burden of exercising reasonable precautions to protect the public when using it on such inducement or invitation; the degree of care to be measured, not by the absolute requirements of the statute, but by the potentialities and probabilities of the situation thus created.—Elliott on Railroads, § 1154, and authorities cited in note 20. Testimony was offered with a view to proving an invitation to use the crossing under the authorities just cited; but that, of course, is not a subject for consideration in passing upon the sufficiency of the pleading. The count under review contained no allegation that defendant had done anything to induce or invite the public to cross at the place in question, and the evidence offered to prove the fact was really without the issue joined. On demurrer the count must be construed most strongly against the plaintiff, and, so construed, it means only

that intestate came to his death by reason of injuries suffered at a private or neighborhood crossing, without more. In these circumstances it was not incumbent upon the defendant to know the presence of plaintiff's intestate upon the track or to keep an especial lookout for him. The only duty imposed upon the engineer was to use due and reasonable diligence to avoid injuring intestate after becoming aware that he was in a position of danger.—*A. G. S. R. R. Co. v. Linn,* 103 Ala. 134, 15 South. 508. No doubt the trial court had these principles in mind when sustaining the demurrer to count A; but the court appears to have overlooked the fact that the averments of the count were broad enough to cover negligence on the part of the engineer in failing to take preventive measures subsequent to his actual discovery of intestate's danger, and so to support a recovery on that theory of the facts.—*Central of Ga. Ry. Co. v. Foshee,* 125 Ala. 199, 217, 27 South. 1006; *Liverett v. N. C. & St. L. Ry.,* 186 Ala. 111, 116, 65 South. 54. The demurrer therefore should have been overruled.

*Birmingham Southern R. Co. v. Kendrick,* 155 Ala. 352, 46 South. 588, is cited, to sustain the ruling in the court below. But it must be observed that the complaint there stated no case devolving upon the engineer the duty to keep a lookout. On the contrary, plaintiff's allegation was that he was attempting to pass between the cars of a train standing over a crossing that was merely customary. Nor was the complaint so general as to admit proof of subsequent negligence. On the contrary, the averment was of a specific act of initial negligence, viz., the failure to give warning of the approach of the engine that shoved the cars together, so causing plaintiff's injury, and the issue of law and fact was thus by the plaintiff's election narrowed and confined to the single inquiry whether the engineer was in duty bound to

[Walker v. Alabama, Tennessee & Northern Railway Co.]

assume that at such a place some one might be engaged in the attempt to pass between the cars, and whether, on that assumption, he was required to give notice of the movement of the engine. That question, wholly and obviously different from the question presented by the demurrer in the case before us, was, of course, answered in the negative.

(6) However, the judgment here cannot be reserved for the ruling on the sufficiency of count A for the reason that the count was good only as a count for subsequent negligence, and of the evidence offered in support of that charge plaintiff had the full benefit as a basis for recovery on count B, which, while averring plaintiff's cause of action with such exceeding great generality as not at all to embarrass him in his proof, yet, under our decisions, sufficiently averred a case of subsequent negligence at a crossing described in terms identical with those employed in count A.

(7, 8) The general charge for defendant on amended count 1 may have been given on the ground of a variance, in that the count charged negligence at a public road crossing, whereas, the evidence tended, without conflict, in our judgment, to show that the place was a private crossing, that is, it was not the crossing of a road established, or adopted, and maintained by the public road authorities of the county; it was, in fact, constructed and maintained by the people of a limited neighborhood for their own benefit and convenience, and in it the general public had no interest.—*Linu Case, supra.* But, aside from the question of variance, the general charge against this count, if it be considered only as alleging simple negligence, and thus as seeking to involve defendant in the duty of keeping a lookout for plaintiff's intestate and giving signals of approach for his benefit, might have been given, for that duty was not devolved upon defend-

ant at that place. If, however, the question of variance still aside, there was error in giving the charge because the count was so broadly framed as to cover a case of negligence subsequent to the discovery of intestate's danger as to which it was of no consequence, except as made so by specific averment, whether the crossing was public or private, the error was not reversible for the reason that plaintiff had the benefit of that case under count B on which the case went to the jury.

(9) So, also, counts charging willful, wanton, or intentional wrong were properly eliminated from the cause by instructions to the jury; the evidence, in our opinion, not affording any substantial basis for an inference of wrong of that gross character. The surroundings of the place, the absence of evidence tending to show that the engineer saw or could have seen the wagon until it was actually upon the track, his indisputable efforts to stop the train, about the bona fides of which there appears no reasonable room for doubt, and his proved inability to stop after the wagon came upon the track, are quite sufficient to exclude any reasonable inference of intentional or wanton wrong.

(10) In view of the conclusions stated above, consideration of the legal sufficiency of those pleas of initial contributory negligence to which demurrers were sustained may be pretermitted as without bearing upon the merits of the cause. The only charge of simple negligence sufficiently stated in the complaint, and indeed the only charge of wrong in any sort to be extracted by inference from the evidence—though this inference must have rested entirely upon the jury's refusal to accept the testimony of defendant's agents upon and in charge of the engine—was that the engineer, after discovering the presence and peril of the wagon upon the track, by reason of inadvertence or error of judgment failed to resort to

some means he had at hand to stop the train, which, if promptly resorted to, might, conceivably, have so delayed its movement as to give the occupants of the wagon a bare chance to escape. To the charge of negligence of this character on the part of the engineer, pleas alleging negligence on the part of plaintiff's intestate or the driver in charge of the wagon in going upon the track were inapt and immaterial as a matter of course, and the charge of initial negligence on the part of the engineer having been eliminated by rulings on the complaint and by failure of the evidence, it is immaterial now to pass judgment on the sufficiency of these pleas. This aspect of the issue defendant sought by these pleas to interject had proper appreciation in the trial court, as appears from the fact that the case was submitted to the jury without reference to the question of contributory negligence. It remains only to say, in this connection, that the case was given to the jury for decision with instructions stating in various forms that plaintiff's right to recover depended altogether upon the inquiry whether the engineer, after discovering the imminent peril of plaintiff's intestate and those with him in the wagon, resorted promptly and in order to all the means at his command to which a prudent and skillful engineer would have resorted to in order to avert the impending disaster. This was the only meritorious issue that admitted of any debate, and in the several instructions declaring and defining this issue the court conformed to the established principles on which we have proceeded.

The court committed no error in allowing the testimony of experts as to the best method of stopping the train, or in taking their opinion whether, on hypotheses having support in the evidence, the engineer had done everything a competent engineer could do to stop the train. The jury were to determine these questions for them-

selves and to base their verdict upon their own judgment of the facts.—*Robinson v. Crotwell*, 175 Ala. 194, 57 South. 23. But there would perhaps have been no adequate mode of arriving at a satisfactory conclusion on the fact in controversy, if expert opinions were rejected, and in recognition of this fact "the courts have adopted the rule of admitting the opinions of witnesses whenever the subject-matter of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it without such assistance; in other words, when it so far partakes of the nature of a science as to require a course of previous habit or study in order to attain a knowledge of it."—Jones on Ev. § 367. Such was the case here.

We have found no error in the record for which the judgment should be reversed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.