(107 So. 218)

**ATLANTIC COAST LINE R. CO. v. CARTER.**
**(3 Div. 732.)**

(Supreme Court of Alabama. Jan. 21, 1926. Application for Rehearing Withdrawn Feb. 23, 1926.)

1. Railroads ☞312(7)—Lookout for persons using private crossing held not required.

Where plantation superintendent was killed by defendant's train at private crossing, defendant was not chargeable with negligence on ground that engineer had duty to keep lookout for persons using it; there being no such long, constant use known to defendant as to charge it with such duty.

2. Railroads ☞312(8) — Plantation superintendent at. private crossing held licensee to whom railroad owed duty to use highest diligence after discovering peril.

In action for killing of plantation superintendent by train at private railway crossing, *held* deceased was a licensee, with right to use crossing when proper use of senses showed it safe, and a contract of plantation owner with railway as to use and maintenance did not increase his rights; sole duty of railroad being to use highest diligence to avoid injuring licensee after discovery of his peril.

3. Railroads ☞312(7)—Whether crossing signals sounded at private crossing held immaterial (Code 1923, § 9952).

Conflict in evidence as to train sounding signals on approaching private crossing *held* immaterial, in action for killing licensee using crossing; Code 1923, § 9952, applying only to public crossings.

4. Railroads ☞312(7)—Code 1923, § 10009, requiring plantation road crossings, inapplicable to duty to keep lookout.

Code 1923, § 10009, requiring railroads to construct crossings for plantation roads *held* without bearing on action for death at such crossing based on failure to keep lookout.

5. Railroads ☞314—Charge, predicating care of railroad on existence of trees and shrubbery obstructing view of one approaching private crossing, held error.

In action for train killing licensee at private railroad crossing, it was error to charge that, if view of traveler approaching crossing was obstructed by trees and shrubbery negligently left on right of way, railway must use due care having regard to such obstruction.

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

Action for damages for wrongful death by Julia E. Carter, as administratrix of the estate of William Carter, deceased, against the Atlantic Coast Line Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The portion of the oral charge to which exception was taken is as follows:

"But if the defendant railroad company negligently permits trees and shrubbery to stand upon its right of way adjacent to a crossing maintained either for public or private convenience, so that the view of a traveler as he approaches the track is obstructed thereby, then it is the duty of the railroad company to use due care in the operation of its trains having in mind such obstruction, and to run them at such a rate of speed in approaching such crossing as to avoid doing unnecessary damage to those lawfully and properly using the same or about to use the same."

These requested charges were refused to defendant:

"(4a) The court charges the jury that, if they believe the evidence in this case, they cannot return a - verdict for the plaintiff on count A of the complaint."

"(21) The court charges the jury that, under the evidence, the defendant was under no duty to plaintiff's intestate as to the speed with which its train approached and was operated over the crossing at which plaintiff was injured, until the employees of defendant, in charge of said train, discovered the peril of plaintiff's intestate on or near the track at said crossing."

"(22) The court charges the jury that, under the evidence, the defendant owed the plaintiff's intestate no duty as to the ringing of the bell or blowing of the whistle, as its trains approached said crossing, until the employees in charge of

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the train discovered the peril of plaintiff's intestate on or near the track."

"(23) The court charges the jury that, under the evidence, it was not incumbent upon the defendant to know the presence of plaintiff's intestate on or near the track or to keep an especial lookout for him. The only duty imposed upon defendant's employees in charge or control of the locomotive which struck plaintiff's intestate was to use due and reasonable diligence to avoid injuring intestate after becoming aware that he was in a position of danger."

Arrington & Arrington, of Montgomery, for appellant.

There being no evidence of negligence after discovery of peril or of wanton injury, plaintiff was. not entitled to recover. There was no duty upon the railroad to keep an especial lookout, or give signals of approach, or regulate the speed of its train, on the idea that the owner of the land might be using the crossing. The affirmative charge and charges 21, 22, and 23 should have been given. Bowler v. Pac. Mill, 200 Mass. 364, 86 N. E. 767, 21 L. R. A. (N. S.) 976, 128 Am. St. Rep. 432; Moffatt v. Kenny, 174 Mass. 311, 54 N. E. 850; Harobine v. Abbott, 177 Mass. 59, 58 N. E. 284; Weldon v. Prescott, 187 Mass. 415, 73 N. E. 536, 105 Am. St. Rep. 413; Kubinak v. Railroad, 79 N. J. Law, 438, 75 A. 443; Elliott on R. R. (3d Ed.) § 1647; Matze v. N. Y. C., 1 Hun, 417; Edwards v. N. Y. C., 169 App. Div. 686, 155 N. Y. S. 176; Guinn v. D. & A. T., 72 N. J. Law, 276, 62 A. 413, 3 L. R. A. (N. S.) 988, 111 Am. St. Rep. 668; Sweeny v. Old Colony, 92 Mass. (10 Allen) 368, 87 Am. Dec. 644; A. G. S. v. Godfrey, 156 Ala. 218, 47 So. 185, 130 Am. St. Rep. 76; Pratt Co. v. Davis, 79 Ala. 308; L. & N. v. Jenkins, 196 Ala. 142, 72 So. 68; Walker v. A. T. & N., 194 Ala. 360, 70 So. 125; Birmingham So. v. Kendrick, 155 Ala. 358, 46 So. 588; A. G. S. v. Fulton, 144 Ala. 332, 39 So. 282; Carrington v. L. & N., 88 Ala. 477, 6 So. 910. The oral charge of the court did not correctly state the law. Rothrock v. A. G. S., 201 Ala. 308, 78 So. 84; Willingham v. Macon, 113 Ga. 374, 38 S. E. 843; Watts v. Jensen, 86 F. 658, 30 C. C. A. 333, 46 L. R. A. 58.

Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellee.

The contract between the defendant and Teague had no binding force as to Carter. The statute made it the duty of defendant to maintain the crossing. Code 1923, § 10009; C. of G. v. Hammond, 19 Ala. App. 515, 99 So. 73; Ex parte C. of G., 210 Ala. 687, 99 So. 74. The situation of the crossing was one that the trial court and the jury could determine from actual view of the scene, and the Supreme Court is not in position to review their determination. Ala. Power Co. v. Fergusen, 205 Ala. 204, 87 So. 796; Montgomery v. Ferguson, 207. Ala. 430, 93 So. 4; Warble v. Sulzberger, 185 Ala. 603, 64 So.

361; Bellingrath v. Anderson, 203 Ala. 62, 82 So. 22. There are circumstances under which the railroad owes a duty before discovery of peril even as to trespassers. B. R., L. & P. Co. v. Jones, 153 Ala. 157, 45 So. 177; Cardwell v. L. & N., 185 Ala. 634, 64 So. 564; 6 Mayfield's Dig. 772; L. & N. v. Williams, 183 Ala. 147, 62 So. 679, Ann. Cas. 1915D, 483; Ill. Central v. Martin, 213 Ala. 617, 105 So. 806. Intestate was not a trespasser, and the defendant owed him a duty. Elliott on R. R. § 54; A. G. S. v. Linn, 103 Ala. 139, 15 So. 508; N., C. & St. L. v. Karthaus, 150 Ala. 633, 43 So. 791; Glass v. M. & O., 94 Ala. 589, 10 So. 215; W. of A. v. Madison, 16 Ala. App. 588, 80 So. 162; 3 Elliott (2d Ed.) § 1150; Thomas v. D., L. & W. (C. C.) 8 F. 729. The oral charge of the court was correct. Corley v. A., T. & S. R. Co., 90 Kan. 70, 133 P. 555, Ann. Cas. 1915B, 764; 33 Cyc. 934; Cont. Imp. Co. v. Stead, 95 U. S. 161, 24 L. Ed. 403, 12 L. R. A. (N. S.) 1067; N., C. & St. L. v. Prince, 212 Ala. 499, 103 So. 464; I. C. v. Martin, 213 Ala. 617, 105 So. 806; So. Ry. v. Dickens, 161 Ala. 149, 49 So. 766; Curry v. So. Ry., 148 Ala. 59, 42 So. 447.

SAYRE, J. Plaintiff's (appellee's) intestate was killed at a road crossing by a locomotive running on defendant's railroad. The crossing was in the midst of a 3,000-acre plantation. It was prepared—no doubt, by the defendant company—as a substitute for another crossing at a different place under and in substantial agreement with the provisions of a contract in writing, into which the defendant company and the landowner entered in 1916, by the terms of which the company granted to the owner, W. M. Teague, "the right or license of placing a private road crossing across its track and right of way" in consideration whereof Teague, "for convenience styled the licensee," covenanted:

"First. That the licensee will not allow any other person or persons to use the said crossing except with the consent in writing of the railroad company.

"Second. That said crossing shall be placed and maintained at the cost and expense of the licensee, but in a manner and of the materials satisfactory to the engineer of roadway of the said railroad company.

"Third. That the licensee shall and will hold harmless the said railroad company, its successors and assigns, from and against all loss, damages, claims, and demands caused in any manner by the placing of said crossing.

"Fourth. That the licensee will vacate said premises and remove said crossing at any time at the will of the railroad company upon thirty (30) days' written notice given to the licensee, and restore the said track and right of way to their original condition, but at the expense of the licensee."

Plaintiff's intestate was Teague's superintendent and had occasion to use the crossing in going about his business. At all other points in the vicinity of the crossing defend-

ant's railroad was guarded by wire fences standing along the east and west margins of its right of way. A plantation road led from a public road on the east by way of the crossing to the barn, and thence to the western boundary of Teague's land, where it connected with other plantation roads which led out to another public road some miles to the west. Tenants lived about on the plantation, and they, of course, used the crossing at will. The neighbors, too, used it when it best served their convenience.

Whether because the proprietor's license included tenants and employees on his plantation—as doubtless it did—or because, apart from the contract, any one, having the right to cross the track of a railroad, may cross whenever and wherever he may have occasion to be on the other side, provided he has the assurance of his senses, properly exercised, that it is safe to do so (Glass v. Railroad, 10 So. 215, 94 Ala. 587), plaintiff's intestate had the right to cross when and where he undertook to do so. But this does not determine the case in plaintiff's favor. Other considerations must be taken into account.

[1] There is no charge of intentional wrong or wanton injury. Nor is it alleged or contended that defendant's servant or agent in charge of its locomotive was guilty of negligence after discovering intestate's peril. The pivotal question, then, is whether there rested upon defendant's engineer the duty to keep a lookout for persons using the crossing. That duty was not imposed by reason of any inclusive contiguity of village, town, or city, as in the Glass Case. There was no such contiguity. Nor does the evidence appearing in the record suffice to establish such constant and long-continued use, known to defendant, as in reason to charge it with the duty of keeping a lookout for persons at the crossing in question; in other words, to confer upon it the characteristics of a crossing public in fact. By contract and by usage it was a private crossing. It may be freely conceded that it was maintained by defendant, though the evidence shows nothing more than such maintenance as resulted incidentally from defendant's efforts to keep its track and right of way in condition. But the evidence, fairly construed, affords no reasonable basis for the inference of an invitation to the general public to cross at that place. Defendant did nothing to hold the crossing out to the public as a suitable place to cross; on the contrary, its contract with the landowner definitely excluded the idea of public right. The landowner's covenant was that he would not "allow any other person or persons to use the said crossing," and, as for the fact that it was in limited use by others, the authorities seem to hold that "neither sufferance, nor permission, nor passive acquiescence is equivalent to an invitation." Elliott on Railroads (3d Ed.) § 1647. This is not to deny that by long-continued use by a large number of people, of such notoriety as in reason to charge the company with knowledge, a railroad company may be brought under duty to maintain a lookout where otherwise there would be no such duty. We have cases recognizing the fact that a duty may be imposed in that way. A. G. S. v. Snodgrass, 79 So. 125, 201 Ala. 653. But that is not this case.

[2] The general public had no interest in the crossing. Intestate had a right to cross; but, assuming that the contract was for his benefit along with the landowner, it is not perceived that his privilege was in the least enlarged thereby, and it seems that the only additional privilege Teague acquired was the privilege of paying for the placement and maintenance of the new crossing. Intestate was not a trespasser. Under the decisions of this court he was a licensee. In the circumstances shown by the record it was not incumbent upon defendant or its employees to know his presence on the track or to keep any especial lookout for him. Their only duty was to use due diligence—the highest degree of diligence—to avoid injuring him after becoming aware of his presence and peril. A. G. S. v. Linn, 15 So. 508, 103 Ala. 134; Walker v. Railroad, 70 So. 125, 194 Ala. 360; A. G. S. v. Fulton, 39 So. 282, 144 Ala. 332; L. & N. v. Jenkins, 72 So. 68, 196 Ala. 136.

We have stated the rule as it appears in the decisions of this court. The same rule is supported by the great weight of authority in other jurisdictions. 3 Elliott on Railroads (3d Ed.) § 1647.

Appellee seems to suggest that, since the crossing was prepared for the use of intestate among a limited number of others, defendant owed him the same duty it owed the public at a public crossing. But this notion cannot be entertained. It would destroy the distinction between private and public railroad crossings, a distinction recognized as useful and necessary in statutes and judicial decisions well-nigh everywhere.

[3] Nor was defendant's engineer affected by the prescriptions of section 9952 of the Code of 1923 in the matter of signals of approach. The evidence was in conflict as to whether signals were sounded; but that was immaterial as matter of law, because the provisions of the section referred to are expressly limited in their application to public road crossings. Elliott, ubi supra.

[4] Appellee refers also to section 10009 of the Code which requires persons or corporations operating railroads to put in crossings for plantation roads and to keep the same in good repair and provides a penalty for failure to do so after written demand. But, entirely apart from the contract between defendant and the landowner, we are unable to see that the section has any bearing upon the case in hand. In it and related sections there is no evidence that thereby plantation road crossings are in any respect put in the same

category with public road crossings. Indeed, reading sections 9952 and 10009 in connection, it is entirely clear that the requirement of signals of approach affects public crossings only.

We come now to the specific questions raised by the court's refusal of charges in writing requested by defendant and the exception to a part of the oral charge.

The case went to the jury on counts 4 and A.

The allegation of count 4 is that—

"The defendant did then and there hold out an invitation to the public to cross its said railroad at a place known as Teague's crossing."

We think our summary statement of the evidence has shown that defendant was entitled to the general affirmative charge as to this count, special charge 5.

Count A alleges that—

"Said crossing was prepared by the defendant and was then being maintained by the defendant for the use of those using said road."

There was no averment that the road across the railroad was a public road or that its customary use imposed upon defendant the duty of keeping a lookout for plaintiff's intestate. The count must therefore be construed to the effect that intestate was crossing defendant's railroad at a private or neighborhood crossing. Such was the fact. And there was no demurrer to the count. But the allegation of negligence was merely general; and, under the law and the facts as we have found them, the only duty resting upon defendant's engineer was to avoid injuring intestate after becoming aware of his presence and peril. There was and is no claim that defendant's engineer failed in the duty mentioned. Defendant was therefore entitled to charge 4a requested by it.

We have said enough to indicate our judgment that defendant was entitled to charges 21, 22, and 23, requested by it in writing.

[5] The exception to the oral charge was well taken. The charge failed to discriminate between public and private roads. There was evidence tending to show that high weeds and some bushes were allowed to stand on defendant's right of way and that these obscured the approach of defendant's locomotive so that plaintiff's intestate, though he stopped and looked and listened, was unaware of his danger until he had driven his automobile on the track and was unable to escape. As to that, we note the fact that intestate lived upon the plantation, crossed the railroad at the place in question in going to and from his daily work, and must have been entirely familiar with the situation. As shed-

ding some light on a situation of that sort, we refer to what was said by this court in L. & N. v. Turner, 68 So. 277, 192 Ala. p. 395, and L. & N. v. Williams, 55 So. 218, 172 Ala. p. 586. But, notwithstanding any consideration that may be thought to have been imported into the case by the presence of weeds and bushes on the right of way, the crossing was, at best, for plaintiff's intestate, a private crossing, he was a mere licensee, he took the crossing as he found it, and the duty defendant owed him was that stated by the authorities heretofore cited. There are cases holding—properly, no doubt—that the fact that weeds and bushes are allowed by a railroad company to grow upon its right of way so as to obstruct a view of the track at the crossing of a public highway may be considered in determining the question of negligence in the operation of trains at such crossing, but not as actionable negligence per se. Corley v. Railway, 133 P. 555, 90 Kan. 70, Ann. Cas. 1915B, 764; Cowles v. Railroad, 66 A. 1020, 80 Conn. 48, 12 L. R. A. (N. S.) 1067, 10 Ann. Cas. 481, and cases cited in the notes. But that rule is applied, not indiscriminately to all crossings, but to the crossings of public highways. Cowles Case, supra. This and other distinctions between public and private crossings may not be obliterated by judicial decision, for that would impose upon railroads the duty of treating every plantation crossing as a public crossing, affecting, among other things, the speed at which their trains may be operated and impairing their ability to perform their duties in the manner expected and required of them by the public.

The court and jury visited the scene of the accident; but it is not perceived how anything they may have there observed can have any proper effect upon the conclusion reached; regard being had to the applicable law and the controlling facts shown by the bill of exceptions. We have no purpose to encroach upon the right of the jury to decide every fairly debatable question of fact; but, accepting plaintiff's evidence that her intestate did stop and look and listen, or rather, conceding the jury's technical right so to find, it still appears, without sufficient warrant for a different conclusion, that the crossing was nothing more than a plantation crossing at which defendant owed intestate only the duty to take especial care for his safety after discovering his peril, and that under the pleadings in the case plaintiff was not entitled to recover.

The judgment must be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.