10 So.2d 273

## SOUTHERN RY. CO. v. WILLIAMS.

### 8 Div. 195.

Supreme Court of Alabama.

Oct. 8, 1942.

Rehearing Denied Nov. 12, 1942.

Harris & Harris, of Decatur, for appellee.

Russell W. Lynne and S. A. Lynne, both of Decatur, for appellant.

BOULDIN, Justice.

■ Appellee sued appellant for damages for destruction of her motor truck resulting from collision with a locomotive, while the truck was stalled on a road crossing. Count 1 of the complaint charged the loss to the negligent operation of the train at a public road crossing. This count, under our rules, included negligence after discovery of peril.

Count 2 was a special count based on negligence after discovery of peril, not naming the character of the crossing.

Count 3 charged negligent operation of the train at a crossing which, for many years, had been prepared, kept and maintained by defendant as a crossing for the public convenience. This count included subsequent negligence.

Count 7 charged the loss to failure to keep the crossing, described as in count 3, in a reasonable state of repair.

Count 6 charged negligent failure to maintain a public road crossing in a reasonable state of repair.

Defendant pleaded the general issue, and special pleas of contributory negligence directed to all counts other than the special count for subsequent negligence.

The case went to the jury on these issues.

The truck was driven by Lonnie McLemore, accompanied by John Kimbell. As employees of plaintiff they drove over Joe Wheeler Highway from Decatur to Sheffield to make a collection. As they returned at night, they turned off the highway onto a roadway going southward, which led over a grade crossing of the railroad.

Their version of the accident was to this effect: Kimbell wanted to see relatives over in that neighborhood. It was raining; had rained heavily. They drove over the grade crossing.

The roadway had a down grade going off the crossing, then turned east alongside the railroad. At this point waters were discovered in the road ahead; such that they did not risk driving through. They left the truck, and proceeded on foot. On returning they undertook to back the truck up the grade and over the crossing.

The truck stalled on the crossing. They tried to extricate it for some time, but could not. They heard the eastbound passenger train blow for another crossing further west. They ran back some 450 feet on the track seeking to flag the train, one waving a flash-light, the other his coat. The train did not slow down until about the instant it hit the truck. It came to a stop within some 750 to 800 feet.

■ The issue of contributory negligence was for the jury. The evidence of the truckmen tended to show the ballast, crushed rock, or gravel with which the crossing was surfaced, was so loose or worn down that the south rail was exposed to full height; that this caused skidding, throwing the truck, or a portion of it, off the surfaced area, wedging the wheels between the rails, &c.

There was no evidence of subsequent concurring negligence of the truckmen, as an answer to subsequent negligence on the part of the trainmen.

■ The wrongful act, if so it be, in using this crossing, or negligence if any, in manipulating the truck causing it to be stalled on the crossing, was not subsequent contributory negligence. Negligence after discovery of immediate peril from an approaching train is of this class. Negligence in getting into a position of peril, from which the truck could not be extricated before a train came over the track is not.

■ On the whole evidence we conclude the question of subsequent negligence on the part of the trainmen was for the jury.

The engineer and firemen testified they were looking ahead, did not see the men signaling on the track, did not see the headlight of the truck, and knew nothing of the presence of the truck until right up on it. They attribute all this to a heavy downpour of rain at the moment. Other evidence is in conflict with this contention. It tends to show the rain had let up at the moment to such extent that the headlight of the truck was seen by others at varied distances, one witness says 800 yards. Under tendencies of the evidence in this case it cannot be said there was no discovery of peril calling for preventive effort until the body of the truck was actually discovered. If men, in the nighttime, are seen running on the track toward the approaching train, giving warning signals, it cannot be said as matter of law that vigilant trainmen do

not become conscious of peril ahead, calling for immediate preventive effort. Even stronger the case, if the headlight of a motor vehicle, shining outward from the track, is also seen.

■■ Actual knowledge of peril, as a basis for subsequent negligence, may come from any source. To say it cannot come from warning signals is to render useless the natural and normal means of preventing catastrophes under conditions here presented. We conclude the evidence made a question for the jury on the issue of public crossing, vel non.

■ Some evidence tended to show this road through improved lands had been open to and used by the public without let or hindrance for some 40 years. That it chiefly benefited the owner and tenants on one large plantation, and those who had occasion to come and go in course of social or business relations with them, is not the test. Evidence tended to show it was not a cul de sac, but connected with the main through highway at either end. A neighborhood road, commonly so called, which furnishes an open outlet to the people of the neighborhood, and to the public in going into and out or passing through the neighborhood at will is none the less public because the public use is not very great. The nature of the use, rather than the quantum is the test. By our later authorities, a presumption of dedication arises by a free, uninterrupted user by the public for 20 years. Locklin v. Tucker, 208 Ala. 155, 93 So. 896; Central of Georgia Ry. v. Faulkner, 217 Ala. 82, 114 So. 686; Ritter v. Hewitt, 236 Ala. 205, 181 So. 289; Atlantic Coast Line R. Co. v. Jackson, 221 Ala. 646, 130 So. 388.

Gates erected on this road are said to denote a permissive use merely. This brings us to consider the evidence on this line. The railroad presumably by authority of law, erected fences enclosing its right of way. Gates were erected by the railroad where this fence crossed this road both north and south of the right of way. It appears, Mr. Bynum, the landowner, consented to this plan, with the privilege of using the fence as part of his enclosures. Just south of this crossing, another roadway branched off leading to the south through enclosures for livestock, to the main residence. A gate was also erected across this roadway. This gate was kept locked. That the latter roadway was purely private is not questioned.

The gate north of the crossing was left open. The gate in the south fence on the road here involved was generally closed, but left unlocked. This manifestly to keep this road available for use as theretofore. Speaking of this gate Mr. Bynum said:

"This other gate was 200 yards down the right-of-way, and it was an iron gate up there by the railroad company. Anybody coming in there has been able to open it and get through. Anybody using that roadway has been able to get through there, and that road down the right-of-way was the one that led over into this community."

■ A gate erected under these circumstances, across an existing road, may be reasonably considered an invitation to use the road as before, and also the crossing, rather than notice of only a permissive user. The facts differentiate this case from Whaley v. Wilson, 120 Ala. 502, 506, 24 So. 855. The evidence also presented a jury question under count 7, alleging the duty to maintain this crossing in a reasonably safe condition, and a breach of such duty, whether or not this was a public road by prescription.

■ This upon the doctrine that a crossing maintained by the railroad company for public convenience is an invitation to the public having occasion to use it. This rule is well defined and applied in Walker v. Alabama, Tennessee & Northern Railway Co., 194 Ala. 360, 70 So. 125, and Southern Ry. Co. v. Holder, 230 Ala. 500, 161 So. 513. This doctrine is not peculiar to Alabama; is recognized in many states. 52 C.J. 176, § 1771 and notes.

The assignments of error presented for review relate to refusal of numerous written charges requested by defendant.

■ The general principles of law herein discussed will suffice to indicate our views upon many, if not all of them. An affirmative charge to either count was properly refused. Any instruction, calling for a verdict for defendant upon hypotheses, ignoring the issue under any of the counts, was invasive of the province of the jury, misleading and properly refused.

■ Charges dealing with statutory duties at crossings in this case were abstract. As for signals evidence was without dispute that the whistle was blown as for a public crossing. Moreover, without question the truckmen became fully aware of the approaching danger. No signals would enable them to extricate the truck.

We deem it unnecessary to deal with charges seriatim. We find no error to reverse in the refusal of any of them, nor in denial of motion for new trial.

Affirmed.

GARDNER, C. J., and THOMAS and FOSTER, JJ., concur.