# Richmond

## The Chesapeake & Ohio Railway Company v. George Pulliam.

January 13, 1947.

Record No. 3118.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*Lett, Murray & Ford,* for the plaintiff in error.

*Savory E. Amato* and *Ross A. Kearney,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This writ of error brings under review the proceedings of the trial in which George Pulliam recovered $7,000 for personal injuries sustained in a collision between an automobile driven by him and a passenger train operated by the Chesapeake & Ohio Railway Company at a grade crossing.

The parties will be designated as plaintiff and defendant according to the positions they occupied before the trial court. The plaintiff, having obtained a verdict, is entitled to have the facts stated substantially as follows: About 8:30 A. M. on December 7, 1944, plaintiff left the home of Dr. Traynham, his employer, driving a 1936 Ford car, and proceeded west about 300 feet along a dirt road parallel to defendant's right of way. He then turned right, stopped his car in approximately ten feet of the nearest rail, looked east and west and saw no train approaching. He saw an employee of defendant painting the crossing sign on the opposite side of the tracks. This employee, with his hands, motioned plaintiff to drive on across the tracks. Plaintiff, in low gear, started across the rails but, before completing the crossing, his car was struck by a westbound engine pulling ten passenger cars. The crew on the engine did not blow the whistle or ring the bell for the crossing.

Defendant contends that the trial court committed reversible error in holding, as a matter of law, that the road across defendant's right of way was a public highway.

The uncontradicted evidence establishes the following facts: In 1882, Thomas Tabb owned a large tract of land situated on the east side of Hampton creek in Elizabeth City county. On June 29 of that year he conveyed to

defendant a 40-foot right of way through his entire farm. On June 25, 1883, Thomas Tabb conveyed to John Booker a triangular-shaped tract of land, containing eight acres, more or less, bounded on the north by the 40-foot right of way, and on the west, south and east by the waters of Hampton creek. The deed conveyed to the grantee a 12-foot right of way through the larger tract owned by the grantor to a public highway which later became known as Hampton avenue in East Hampton.

This private outlet for the 8-acre tract across the 40-foot right of way of defendant and through the tract of land formerly owned by Thomas Tabb became known as Linden street. A part of the land fronting on the west side of this 12-foot outlet and north of defendant's right of way was subdivided into lots on which dwellings were erected. The land on the east of the 12-foot strip and north of defendant's right of way is now used as a golf course. It seems that no one conveyed this 12-foot strip to the county or State, nor is there evidence tending to show formal dedication of any part of Linden street to public use. However, this 12-foot strip, called Linden street, on the north side of defendant's right of way is now included in the official map of the State highway system. It has been macadamed and maintained by the Highway Department for more than five years. This is sufficient to establish the fact that the 12-foot strip, or Linden street, is a public highway as far south as the defendant's right of way.

By mesne conveyances, the triangular-shaped, 8-acre tract south of defendant's right of way was conveyed to Doctors Wade L. Traynham and Willard P. Smith, with the center of the 12-foot outlet the dividing line between them. Each of these two men, with his family, resides on the land conveyed to him. Two other families live on these two tracts.

The 12-foot strip on the south side of defendant's right of way is a dirt road and extends north across defendant's right of way and joins the southern end of Linden street, making the crossing and the dirt road in appearance a continuation of the same street or highway.

The substance of defendant's contention is that a traveler on Linden street, going south, would be using a public highway until he reached the northern side of defendant's 40-foot right of way, when he would cross the right of way on a private crossing into the dirt road, which, to all intents and purposes, is nothing but Linden street extended; that a traveler going north on the dirt road would be using a private way until he crossed the grade crossing from south to north.

This situation has confused the users of this highway and the employees of the railway company. Fifteen feet north of the tracks defendant has erected and maintains the usual grade crossing sign similar to the signs erected and maintained at all public highway grade crossings. The engineer in charge of the train involved in the accident testified that he had been operating this train for approximately three years, and that he habitually gave the usual warning signals for a public highway crossing when he approached the Linden street crossing.

The evidence is not clear as to whether whistle posts have been erected on either or both sides of the crossing as signals to the operators of defendant's trains to begin sounding the crossing signals.

Mr. E. T. Rucker, assistant division engineer of defendant company, in charge of maintenance of tracks, erection of signal posts, etc., testified that the Linden street crossing was regarded by the officials of the railway as a private crossing and that no whistle post had been erected for it, nor were the train crews required to give the statutory signals for a highway crossing. He conceded that usage was the usual test to determine whether a grade crossing was private or public, and that he was not familiar with the usage of this crossing over a sufficient period of time to state whether such usage made it public or private.

The evidence for plaintiff on this issue is that this crossing was used daily by the public. The two doctors living on the 8-acre tract maintained offices in Hampton. They used the crossing at least twice daily. Their children and others used

the crossing in going to and from school. Members of the four families used the crossing in attending church and social functions. Other people in the community and the public generally, including merchants and traders, used the crossing in the normal conduct of their business. Mr. Girard Chambers, an eminent civil engineer, stated that he had been living in Elizabeth City county for fifty years. When asked how long Linden street extended had been open to public use and used by the public, he said: "My first knowledge of it was when I laid out the grounds for the female college, and that has been around forty years ago." It has been used constantly since then by the public.

These facts bring the case within the influence of *Southern Ry. Co.* v. *Abee*, 124 Va. 379, 98 S. E. 31. Judge Kelly, speaking for the court at pages 382-3, said: "The Boatwright alley, though owned by the furniture company, was in constant use by numbers of persons, employees of that company and others, who crossed the tracks there every day. The engineer and conductor in charge of the shifter both knew that the crossing was used every day by large numbers of persons at the very hour when the accident occurred; and there was evidence tending to show that the defendant company had recognized it as a highway crossing by the erection there of a 'whistle post.' It was clearly such a crossing as to fall within the letter and spirit of section 1294-d (24) of the Code (now Code of 1919, sec. 3958), requiring the sounding of a whistle and the ringing of the bell by all locomotive engines as a warning of their approach to highway crossings, * * * ." See *Chesapeake, etc., Ry. Co.* v. *Bullington*, 135 Va. 307, 116 S. E. 237; *Norfolk, etc., Ry. Co.* v. *Bristol*, 116 Va. 955, 83 S. E. 421; *Southern Ry. Co.* v. *Williams*, 243 Ala. 429, 10 So. (2d) 273; *Alabama Great So. Ry. Co.* v. *Campbell* (Ala. App.), 26 So. (2d) 124.

The facts in the case at bar are quite different from the facts in *Virginian Ry. Co.* v. *Rodgers*, 170 Va. 581, 197 S. E. 476, and *Washington-Virginia Ry. Co.* v. *Fisher*, 121 Va. 229, 92 S. E. 809, relied upon by defendant.

Defendant contends that the negligence of plaintiff in attempting to cross the tracks in front of an oncoming train in plain view was the sole proximate cause of the accident.

The evidence for defendant is that the crossing signals were duly given; that the employee of defendant painting the warning sign saw the train coming and motioned plaintiff to stop; that, at a point ten to fifteen feet south of the south rail, a traveler on the highway could see a train approaching from the east at least 1450 feet from the crossing; and that, although the signals were given and the approaching train, traveling between 25 and 30 miles an hour, was in plain view, plaintiff drove upon the tracks. This version of the evidence supports defendant's contention, but the evidence for plaintiff on the point is quite different and is as follows: Approximately 10 feet from the south rail plaintiff's view of the oncoming train was obstructed by the honeysuckle and bushes, which the defendant had negligently allowed to grow on its right of way, to such an extent that he could see only 75 feet down the track in the direction from which the train was coming. Other witnesses for plaintiff testified that they heard the noise of the approaching train but that no whistle was blown or bell rung for the crossing. Plaintiff himself testified that he saw the painter and understood from his (the painter's) motions that he was to proceed across the tracks. Plaintiff's car was between the rails before he saw the approaching train and it was then too late to avoid the collision. Plaintiff also testified that the windows to his car were closed and that he did not hear the noise of the approaching train, but that, if the whistle had been blown, he could easily have heard it.

This conflict in the evidence produced three jury questions: (1) Whether defendant gave the statutory signals for the crossing; (2) whether the failure to give the signals was the proximate or a contributing cause of plaintiff's injuries; and (3) whether, under the circumstances, plaintiff was guilty of contributory negligence in his attempt to cross defendant's tracks. The trial court in its instructions fairly submitted the first and second issues to the jury. On the

third issue its instructions were erroneous, as pointed out below.

Defendant's last important assignment of error is based on the ruling of the trial court in granting plaintiff's instruction No. 2 and in amending defendant's Instruction M. These instructions, with the objectionable words in italics, are as follows:

Plaintiff's Instruction No. 2: "The Court instructs the Jury that if they believe by a preponderance of the evidence that the defendant's agent in charge of the operation of a steam locomotive train running from Phoebus to Hampton did fail to blow the whistle sharply at a distance of not less than 300 yards nor more than 600 yards from the crossing where the plaintiff was injured and that the failure to blow the whistle was the direct cause of the said accident which resulted in the injuries to the plaintiff, then they shall find for the plaintiff even though the plaintiff failed to exercise due care in approaching the said crossing; *however, his failure to exercise due care may be considered in mitigation of damages.*" (Italics supplied.)

Defendant's Instruction "M": "The Court instructs the jury that while the statute of Virginia requires the warning signals to be given upon the approach of a train to a crossing, as set out in other instructions, nevertheless, this does not relieve the plaintiff from exercising all of the care and caution that a reasonable and prudent man, acting prudently under the circumstances would exercise in passing over a railroad crossing at grade. And while another statute permits a plaintiff to recover damages for injuries received at a crossing if the statutory signals were not given, as provided by law, nevertheless, you are instructed that if the signals were not given,

"(1) That the plaintiff himself was guilty of negligence in attempting to go over the crossing in front of the oncoming train, the jury *may* take into consideration the plaintiff's negligence in mitigation of any damages that you consider he is entitled to recover, and,

"(2) If you find that the plaintiff looked for the

approach of the train when the same was in plain view, and too close to negotiate the crossing, and the plaintiff negligently failed to heed the same, and his failure was the sole proximate cause of the collision, then the plaintiff cannot recover at all, and you must find your verdict for the defendant."

"Mr. Kearney (for plaintiff): I have no objection to that instruction."

The revisors of the Code of 1919 stated in their note to section 3959 that injuries and deaths at grade crossings had become so numerous that for the safety of travelers they were constrained to recommend this additional legislation in order to force railroads, whose lines were operated by steam, to a more rigid compliance with the sounding of the statutory grade crossing signals required by section 3958. Section 3959, so far as it is applicable, abolishes the doctrine of contributory negligence as a complete bar to recovery and introduces in a modified form the doctrine of comparative negligence. The concluding words of the statute are: " * * * , but the failure of the traveler to exercise such care *may* be considered in mitigation of damages." (Italics supplied.)

The word "may" is *prima facie* permissive, importing discretion, but the courts construe it to be mandatory when it is necessary to accomplish the manifest purpose of the Legislature. See *Pearson* v. *Board of Sup'rs,* 91 Va. 322, 334, 21 S. E. 483; *Leigton* v. *Maury,* 76 Va. 865, 870; *United States* v. *Thoman,* 156 U. S. 353, 15 S. Ct. 378, 39 L. Ed. 450; *Ex parte Doyle,* 62 W. Va. 280, 281, 57 S. E. 824; *Dawson* v. *Phillips,* 78 W. Va. 14, 17, 88 S. E. 456.

This court, in numerous cases, has consistently construed the word "may," as used in the statute, to be mandatory and not merely permissive.

The first time this statute came under review by this court was in *Norfolk, etc., Ry. Co.* v. *Simmons,* 127 Va. 419, 427, 103 S. E. 609, where Judge Prentis, speaking for the court, said: "Instead of excluding the plaintiff from any recovery and making his contributory negligence a complete bar to

the action, it (sec. 3959), if the other requisites therefor exist, allows a recovery, *requiring* the jury however to consider the contributory negligence of the plaintiff in mitigation of damages, * * * ." (Italics supplied.)

Judge Chichester, in *Southern Ry. Co.* v. *Johnson,* 151 Va. 345, 354, 143 S. E. 887, 146 S. E. 363, speaking to the point, said: "If the failure to give the signals in any way contributed to the accident, then, however grossly negligent the traveler was, he is entitled, under section 3959, to recover, subject to mitigation of his damages in proportion to his negligence."

After quoting from the two cases cited above, Chief Justice Prentis, *Norfolk, etc., Ry. Co.* v. *Hardy,* 152 Va. 783, 797, 148 S. E. 839, said: "It is obvious that the statute imposes upon the jury the duty of considering and appraising the contributory negligence of the plaintiff. That which is imposed as a duty is mandatory and cannot be treated as permissive."

Justice Epes, speaking for the court in *Virginian Ry. Co.* v. *Haley,* 156 Va. 350, 377, 157 S. E. 776, said: " * * * ; but if the negligence of the plaintiff contributed to causing the injury, it *may* and *must* be considered in mitigation of damages." (Italics supplied.)

See also, *Southern Ry. Co.* v. *Berry,* 172 Va. 266, 1 S. E. (2d) 261.

The use of the word "may" in the instructions quoted left the consideration of the alleged contributory negligence of the plaintiff to the discretion of the jury instead of making it mandatory upon them to consider it in mitigation of damages. This is contrary to the expressed decisions of this court on this point and constitutes reversible error.

The fact that the trial court, in its verbal instruction to the jury, construed the statute to be mandatory, in its provision requiring the jury to consider the contributory negligence of plaintiff in mitigation of damages, did not cure the error. The jury took the written instructions of the court with them to their room, and, even if they had noted the difference between the oral instruction and the

written instructions, they naturally would have given more weight to the latter. When these instructions are considered, together with the substantial amount of recovery allowed by the jury, it is impossible for the court to determine whether the jury gave any consideration to the alleged contributory negligence of plaintiff.

We reverse the judgment of the trial court and remand the case for a new trial on the following issues: The amount of damages, if any, to which the plaintiff is entitled; whether plaintiff was guilty of contributory negligence; and, if so, this fact must be considered in mitigation of damages.

*Reversed and remanded.*

EGGLESTON and SPRATLEY, JJ., dissenting in part.

We are of opinion that the judgment should be reversed and the case remanded for a new trial on all the issues.