34 So.2d 862

## MODEL CITY LUMBER CO. v. SOUTHERN RY. CO.

6 Div. 326.

Court of Appeals of Alabama.

Jan. 20, 1948.

Rehearing Denied Feb. 24, 1948.

426

Jackson, Rives & Pettus, of Birmingham, for appellant.

Benners, Burr, Stokely & McKamy and R. Greye Tate, all of Birmingham, for appellee.

CARR, Judge.

The plaintiff, for the use and benefit of the Employers Insurance Company of Alabama, sued the Southern Railway Company for damages to an automobile truck. It is not disputed in the evidence that the truck stalled on the railroad track and while thus positioned was struck by a moving freight engine.

 The case was submitted to the jury on Counts D and E. The former is based on alleged defective conditions at the crossing. The later is counted on the claimed negligent operation of the train. This latter count was broad enough to include the doctrine of subsequent negligence or negligence after discovery of peril. Central of Georgia R. Co. v. Forshee, 125 Ala. 199, 27 So. 1006; Liverett v. Nashville, C. & St. L. Ry., 186 Ala. 111, 65 So. 54; Southern R. Co. v. Williams, 243 Ala. 429, 10 So.2d 273.

There was a verdict in favor of the defendant.

It is not insisted that the crossing in question was a public one in the sense that it comes under the influence and directions of the provisions of Title 48, Sec. 170, Code 1940.

With reference to the general use of the crossing, the driver of the damaged truck testified that he had resided in the house he then occupied for about five months; that there were two other families living in the near vicinity; that he was the only occupant of either of the houses who owned a truck or car; that during the period indicated he passed over the crossing morning and evening en route to and from his place of employment. He testified also that relatives and friends would from time to time visit at the three homes and would use the crossing in vehicular travel. There was some slight evidence tending to prove that the railroad company did some maintenance work at and near the place of the

collision, but, when this testimony is considered in its reasonable implications, it is clearly inferable that such upkeep at the crossing point resulted incidentally from the defendant's efforts to maintain its track and right of way in a state of repair.

We are not unmindful that our authorities are committed to the rule that the character of the passageway is to be determined by the nature of its use rather than the quantum. However, in the instant case we are clear to the view that the facts and circumstances constituted the truck driver at most a mere licensee. This being true, it was not incumbent upon the railroad company by its servants to keep an especial lookout for the stalled truck. Of course, after the defendant's engineer discovered the perilous position of the vehicle, the duty incident and applicable to the doctrine of subsequent negligence was imposed. Pratt Coal & Iron Co. v. Davis & Davis, 79 Ala. 308; Atlantic Coast Line R. Co. v. Carter, 214 Ala. 252, 107 So. 218; Alabama Great Southern R. Co. v. Campbell, 32 Ala.App. 348, 26 So.2d 124; Walker v. Alabama, T. & N. Ry. Co., 194 Ala. 360, 70 So. 125; Western Ry. of Alabama v. Madison, 16 Ala.App. 588, 80 So. 162; Alabama Great Southern R. Co. v. Fulton, 144 Ala. 332, 39 So. 282; Alabama Great So. R. Co. v. Linn et al., 103 Ala. 134, 15 So. 508.

These rules were correctly stated in written charges 1 and 11, which were given at the instance of the defendant and which action of the court is made the basis of assignments of error 1 and 2.

When the defendant objected the court did not permit the plaintiff to show "that about three or four days after the accident happened the section gang of the railroad company came down and filled in between these two rails on this crossing."

Whatever view we may entertain with reference to the admissibility of this matter becomes an immaterial decision. The record shows that just prior to the effort to make the indicated proof the same witness was interrogated as follows:

"Q. Now, after this accident happened, did you see the section gang around that crossing? * * * A. Yes, sir; they worked and all there.

"Q. I mean after this accident happened? A. Yes, sir; they worked it after it all happened.

"Q. How long after it happened? * * How long was it? A. About three or four days afterwards.

"Q. And what did they do? A. They hauled chert and all down there and put it on the railroad.

"Q. Where did they put it? A. There where I told you."

It is clearly evident that the appellant received the benefit of the facts about which he complains. Powell v. State, 5 Ala.App. 75, 59 So. 530; Mathis v. State, 15 Ala.App. 245, 73 So. 122.

The fourth and final assignment of error is predicated on the action of the court in giving for the defendant a written instruction which is generally denoted as a "mere or unavoidable accident" charge.

It now seems unquestionably established by the authorities that neither the giving nor the refusal of such a charge constitutes reversible error. Smith v. Baggett, 218 Ala. 227, 118 So. 283; Loreno v. Ross, 222 Ala. 567, 133 So. 251; Bradford v. Birmingham Electric Co., 227 Ala. 285, 149 So. 729.

We have responded to all questions which are presented by this appeal.

It is ordered that the judgment of the court below be affirmed.

Affirmed.

## On Rehearing

CARR, Judge.

In our original opinion we stated in substance what the evidence disclosed with reference to the general use of the railroad crossing. We confined our delineation to the time the deposing witness lived in that immediate vicinity. It appears that we failed to take into account a time prior thereto during which the witness showed some acquaintance with the general use of the crossing for vehicular travel. In fairness to the appellant, we set out in haec verba some other evidence relating to this inquiry:

"Q. How long, Ace, to your knowledge has the public been using this road here (indicating) and that road crossing to cross the tracks of the Southern Railway Company at that point? * * * A. Oh, it has been used for about fifteen years to my knowing.

"Q. Well, now does this road connect to any other highway around there? A. It goes straight through and over to the highway.

"Q. Which highway? A. Birmingham-Anniston.

"Q. That is a paved highway, is it? A. That is right. * * *

"Q. But now over on the North side of the track? A. It comes back out into the dirt road, the Lincoln Road.

"Q. The Lincoln Road, is that what they call that (indicating)? A. That is the Lincoln Road right there (indicating).

"Q. Does that road lead on up to Lincoln? A. Yes, Sir; it leads back there to the forks of the road. There (indicating) is the forks of the road.

"Q. Does it stop here at the forks of the road (indicating) or does it continue on? A. There is the forks of the road there (indicating).

"Q. Does it continue on? A. Yes sir.

"Q. Can you go on up to Lock 4? A. You can go on up to Lock 4 and on down there and cross at Embry's Crossing, cross the railroad down there at Embry's Crossing; it goes on out and hits the highway down there below Embry's Crossing. * *

"Q. And that was the only truck that used that crossing? A. The only one that went up there while I was there.

"Q. The only one that went up there while you were there was that truck that you were keeping at your house? That is right, isn't it? A. Of course, other people were driving there in automobiles.

"Q. I am asking you if that truck that you drove wasn't the only truck that you saw using that crossing during the time that you were living there? A. No; I have seen other people go across.

"Q. Well, you didn't see Mr. Johnson, did you? A. No, but others.

"Q. And you didn't see that other man down there, did you? A. No; but other people, you know, that live around there.

"Q. Now, what other people have you seen driving over that crossing? A. Oh, I don't know who they were.

"Q. You don't know who they were? A. No sir.

"Q. Were they trucks or cars? A. They were cars.

"Q. They were cars? A. Yes sir.

"Q. You mean to tell the jury that people go from the Atlanta Highway and from the Lincoln Highway along that road rather than go up this highway (indicating) and cross over at Embry's Crossing? A. I have seen people go through that road.

"Q. How many? A. I have seen a good many go through there. All I could figure out that made it, it is just a little nearer cut over to the highway.

"Q. How many? A. I would say a good many. * * *

"Q. In the time that you were living where you were living when this accident happened, how many people did you see go over there other than yourself? A. Oh, I have seen lots of them. * * * A. Oh, I reckon I have seen at least fifty cars coming in and out through there.

"Q. In the course of how long? A. During the five months."

Taking into account this additional evidence, we do not conclude that the view we expressed in our original opinion is in any manner affected. Clearly, the facts in the instant case do not bring it under the influence of the holding in Southern Ry. Co. v. Williams, 243 Ala. 429, 10 So. 2d 273.

We see no good reason to make any further response to the other questions which had our attention in the original opinion.

The original opinion is extended, and the application for rehearing is ordered overruled.

Opinion extended.

Application overruled.