# Richmond.

## LANFORD v. VIRGINIA AIR LINE RAILWAY CO.

### January 18, 1912.

1. APPEAL AND ERROR—*Objection to Evidence—Bill of Exception.*—This court cannot consider objections made to the reception of evidence by the trial court when no bill of exception was taken to the ruling of the trial court.

2. EVIDENCE—*Report of Commissioners in Condemnation—Testimony of Commissioners.*—In determining whether or not commissioners in condemnation proceedings took into consideration all the damages incident to the construction of a railroad through the lands of a proprietor, the testimony of the commissioners is receivable for the purpose of explaining and making clear their report.

3. RAILROADS—*Private Crossings—Convenience of Both Parties—Cost—Reasonable Construction of Statute.*—While the statute (Code, sec. 1294–b, clause 2) imposes upon a railroad company, whose line of road passes through the lands of any person, the duty to provide proper and suitable wagon ways across its road-bed from one part of said land to the other, and to keep such ways in good repair, the statute must receive a reasonable construction, so as to make the remedy commensurate with the right of the land-owner and the mischief intended to be redressed. Regard must also be had to the convenience of both parties, and the cost to be incurred by the party required to construct the crossing. The land-owner has not the arbitrary right to demand an underground crossing.

4. RAILROADS—*Private Crossings—Damages at Condemnation—Cost of Crossing.*—One who has received without contest the damages allowed for constructing a railroad fill across his land cannot, after the fill has been constructed, compel the railroad company to take out the fill and reconstruct its road-bed so as to provide him an underground wagon way from one part of his farm to another, where it appears that the cost of such reconstruction would amount to three times the assessed value of the entire farm, including buildings, while the injury and inconvenience to the land-owner would be comparatively insignificant.

5. RAILROADS—*Private Crossings—Establishment—Report of Commissioners—Weight Given.*—The report of the commissioners establishing a private

railroad crossing, under section 1294–b of the Code, is to be taken as *prima facie* correct, and, if nothing irregular appears on its face, great weight should be given to it; but the trial court is the final arbiter of the propriety of directing the crossing to be constructed, and may, for good cause shown, refuse to confirm the report of the commissioners. The report of the commissioners simply make out a *prima facie* case.

6. Appeal and Error—*Burden of Showing Error.*—The burden is on the appellant to show error in the decree or judgment appealed from, and, if he fails to show it, the decree will be affirmed.

Error to a judgment of the Circuit Court of Fluvanna county, on a petition to have established a private railroad crossing. Judgment for the defendant. Petitioner assigns error.

*Affirmed.*

The opinion states the case.

*Pembroke Pettit* and *J. O. Shepherd,* for the plaintiff in error.

*C. W. Allen, L. O. Haden,* and *Harmon & Walsh,* for the defendant in error.

Cardwell, J., delivered the opinion of the court.

J. W. Lanford, with the view of availing himself of the benefits of section 1294–b, clause 2, of the Code of 1904, filed his petition with the Circuit Court of Fluvanna county, demanding of the Virginia Air Line Railway Co. the construction of an under-way crossing for a wagon road from the uplands to the lowlands of his farm, at a designated point on the defendant's railroad line, where it passes through plaintiff's farm, and where the railroad bed is constructed with a very high fill.

Pursuant to the statute, the circuit court appointed three commissioners, who returned a report, signed by only two of them (although the three considered the matter together), favorable to the plaintiff, and to the report the defendant company filed exceptions, which were sustained. Whereupon the two commissioners were, over the objection of the defendant, allowed to amend their report. At a later term of the court the cause came on for

final hearing, upon the amended report of the commissioners, the evidence introduced by the plaintiff, as well as that introduced by the defendant, and the argument of counsel for both parties. Thereupon the court adjudged that good cause had been shown why neither of the reports made by the two commissioners, in favor of the plaintiff, should be confirmed, and that the plaintiff's application be dismissed, with costs to the defendant. This judgment we are asked to review and reverse.

The statute, *supra*, so far as relevant to the issue, is as follows:

"It shall be the duty of every railroad * * * corporation, whose road * * * passes through the lands of any person in this State, to provide proper and suitable wagon-ways across said road * * * from one part of said land to the other, and to keep such ways in good repair. Such ways shall be constructed on the request of the land-owner, in writing, made to any section master, agent, or employee of such company, having charge and supervision of the railroad * * * at that point, and shall designate the points at which the wagon-ways are desired. * * * If the company fail or refuse, for ten days after such request, to construct wagon-ways, of a convenient and proper character, at the places designated, then the owner, having given ten days' notice in writing, as aforesaid, may apply to the circuit court of the county * * * wherein the said land is located for the appointment of three disinterested persons, whose lands do not abut on the said railroad, * * * who shall constitute a board of commissioners, whose duty it shall be to go upon the land and determine whether the wagon-ways asked for should be constructed. Their decision shall be in writing, and, if favorable to the land-owner, it shall set forth the points at which the wagon-ways should be constructed, giving also a description of what should be done by the company to make a suitable and convenient way. The decision of the commissioners shall be returned to and filed in the clerk's office of such court, and, when called up at the next, or any succeeding term of said court, it shall be affirmed, unless good cause is shown against it by the company, either party to have the right of appeal to the Supreme Court of Appeals from the judgment of the said court."

The report of the commissioners in this case recommended

that the defendant railway be required to construct, at the point designated by the plaintiff, an under-way "wagon-way, twelve feet wide. and not less than twelve feet high from sub-grade, and it shall preserve intact the original grade of the said wagon-way or road." The earth fill through which this under-way crossing was to be constructed is about eighteen feet high and about eighty-two feet wide, and the wagon-way was to be an open trestle, or an arch subway, in the discretion of the railway company.

Plaintiff in error's farm is situated on the Rivanna river, in Fluvanna county, and contains approximately two hundred acres, of which about thirty acres is fertile and productive bottom land, and upon the residue of the farm—the highland—his dwelling, barn, and other buildings are located. On the upper or western side of the farm a high and precipitous bluff projects from the table-land sheer to the water's edge of the river at low water, circling back from the water's edge and southward up-stream, or towards the west, almost perpendicular, and following the winding of the stream, but not receding very far from the banks. Down-stream, or eastward, however, the bluff breaks more abruptly southward, and, circling somewhat eastward, leaves the above-mentioned piece of low-grounds, or bottom land, about one-third as wide as it is long, extending from the projection the entire distance of plaintiff in error's farm to the eastern boundary line between him and one C. E. Jones; and this bluffy formation, extending all the way to his eastern boundary, divides his low-grounds from his highland, the bluff standing most of the way at an angle of about forty-five degrees. There are, however, three depressions in the bluff, the first being not far from where the bluff projects into the river, called depression No. 1; the second about midway plaintiff in error's low-grounds, called depression No. 2; and the other over on Jones's land, not far from the division line, called depression No. 3. That plaintiff in error may have defendant in error to construct and maintain a wagon-way through the fill in depression No. 2, so that he can have the use of the road leading from his highland to the low-grounds, which he in the main formerly used, is the subject matter of this controversy.

It appears that when it went about the acquisition of a right of way through plaintiff in error's farm, defendant in error com-

plied with the statute—sec. 1105–f (4), ch. 46–B, Code—with respect to the filing in the clerk's office of Fluvanna county of maps and profiles, showing the cuts and fills, etc., in the proposed construction of its road-bed through the farm of the plaintiff in error, and which showed that the right of way desired was along the entire length of the bluff separating the highland from the low-grounds, and that the road-bed was to be constructed by fills and cuts, and not by trestling. Moreover, when the five commissioners appointed in the condemnation proceedings to assess and report the damages to be paid by defendant in error for the right of way through plaintiff in error's farm were upon the farm, viewing the route of the proposed road-bed, etc., plaintiff in error had his attention called to the fact, both by the commissioners and defendant in error's engineer in charge of the construction of its road-bed through plaintiff in error's farm, that the road-bed was to cross depression No. 2 over a fill, and not over a trestle or arch, which, of necessity, would put an end to the use of this depression for a wagon-way.

Clauses 6–8, sec. 1105–f, of the Code, *supra*, provide that the commissioners condemning land "shall ascertain what will be a just compensation for said property and land, * * * and assess the damages, if any, to the adjacent or other property of such tenant or owner, * * * beyond the peculiar benefits which will accrue to such properties, respectively, from the construction and operation of the company's works."

It is quite clear that the commissioners for condemnation are required, by the sections of the Code just referred to, to take into consideration all damages incident to the construction of a railroad as designed, according to the maps and profiles filed in the clerk's office, as required by statute, and in this case there is no ground for the contention of plaintiff in error that the commissioners disregarded the requirement of the statute when assessing his damages in the condemnation proceedings. On the contrary, four of the commissioners have testified in this case to the effect that they did regard the requirements of the statute; that they knew that the profile called for a fill across depression No. 2; that the damages assessed to plaintiff in error ($600.00) would not have been as great, but for the closing up of the road formerly used by

plaintiff in error through depression No. 2; that the increase of
the damages beyond what they would have allowed was because
they knew that the road through depression No. 2 would be stopped
up; that while they considered that the railroad was bound to give
plaintiff in error another road, he could not get another such road
as the one to be stopped by the fill; "he would have to go right
much farther to get a road, farther to haul, and that he could have
got about as short a road to haul over, but more grade."

One of these commissioners (Dr. Boston), when asked to state
the nature of any conversation had between the commissioners
and Lanford (plaintiff in error), before they brought in their final
report, said: "I had been talking with Mr. Lanford a good deal
about the matter, and I suggested to him that, as the question
of that road was involved in that decision, I thought we ought to
make report setting forth that, if the road was stopped, the com-
missioners awarded so much damages, or, if it was not interfered
with, that we would allow him so much damages. Before we
concluded our report I sent for Mr. Lanford, and asked him, and
he said he would consult his lawyer. He went out and came back,
and said something about just go on, and I took it for granted
that we had given him big damages because of the stopping up of
the road. I think that was the view of all the commissioners."

The other commissioner, H. P. Kent, refused to sign the report
assessing damages to plaintiff in error at $600.00, and, testifying
for him in this case, in effect corroborates the other commissioners
in the statement that, in considering the damages to be allowed
for the railroad's right of way, it was understood that the road-bed
was to be constructed across depression No. 2 by a fill, thereby
discontinuing the road that plaintiff in error had been using as a
farm road mainly; but, while he gave his reasons for not signing
the report returned by the commissioners, and says that, without
reference to the crossing, he was in favor of fixing the amount of
damages at $1,000, he does not undertake to explain why the
amount he favored was greater than the amount favored by any
of the other commissioners; and, when asked if there was any other
practicable way than this depression (No. 2) for a road to the
low-grounds, he answered: "I don't think there is any point on
his place that he could build a road that would compare with

that." Here the witness corroborates the statement made by the other commissioners, to the effect that the discontinuance of the farm road in question, and the consequent inconvenience, etc., to which plaintiff in error would be put, were matters taken into consideration by the commissioners in fixing the amount of damages allowed him.

The report of the commissioners was returned to court, confirmed without objection, and plaintiff in error was paid the amount of damages ($600.00) assessed to him.

Objection was made by plaintiff in error to the admission in this proceeding of the testimony of the four commissioners adverted to above, but no bill of exceptions has been taken to the ruling of the court admitting it, and, therefore, the objection has to be considered as waived. *N. & W. Ry. Co.* v. *Scott*, 92 Va. 34, 22 S. E. 811; *Same* v. *Ampey*, 93 Va. 108, 25 S. E. 226. If such were not the case, this evidence was admitted for the purpose only of explaining and making clear the report of the commissioners, and for that ruling authority is abundant.

It is manifest that in the beginning, and throughout this whole controversy, plaintiff in error has proceeded upon the erroneous theory that the statute gives him the arbitrary right to demand and have of the defendant in error, not only an under-way wagon road, crossing from one part of his farm to the other, but at the point he designates, and without regard to the costs thereby imposed upon the defendant in error, or whether the inconvenience and expense to him in having to take and use a grade crossing of the railroad's right of way, at another point on his farm, would be much or little.

The statute admits of no such construction, even if it were clear that it contemplates that a railway company can be required to construct an under-way crossing to give access from one part of a farm to another, where a farm is divided by the road-bed constructed through it. It is very clear that the statute contemplates that the way is to be constructed readily and quickly. It does not, as plaintiff in error contends, merely provide that the railway company, when the land-owner requests a farm crossing, shall, within ten days, agree to construct it; but provides: "If the company fail or refuse, for ten days after such request, to construct

wagon-ways of a convenient and proper character, at the places designated, then the owner may" institute legal proceedings to require the company to construct such ways as he has designated. The statute does not impose upon a railway company the duty to "provide a crossing," but to provide proper and suitable "wagon-ways across" the railroad right of way, and the words "wagon-ways across" appear significant, especially so when the statute is read along with clause 3 of section 1294–b, ch. 54–A, of the Code, which latter section deals with the crossing of one railroad by another, and uses the word "crossing" only, and that section has been construed by this court to require no more than a surface crossing. *N. & W. Ry. Co.* v. *Tidewater Ry. Co.*, 105 Va. 129, 52 S. E. 852. When, in the same act, sec. 1294–d, clause 38, the legislature declared the policy of the State to be that crossings shall be either over or under existing structures, no mention is made of private crossings, nor any language used to indicate that they were to be considered as subject to this policy.

That section is: "It is hereby declared to be the policy of this State that all crossings of one railroad by another, or of a county road or highway by a railroad, or of a railroad by a county road or highway, shall, whenever reasonably practicable, pass above or below the existing structure."

Construing sec. 1294–b, cl. 3, *supra*, in the light of the declared policy of the State, just quoted, this court held that the statute did not necessarily require an overhead viaduct by one railroad in crossing another, *where the expense would be excessive.*

In this case the report of the two commissioners, which the circuit court refused to confirm, required that defendant in error excavate an opening through its road-bed, build two walls eighteen feet high, twenty feet wide at the top and eighty-two feet wide at the bottom, then fill back behind the walls and bridge across the opening, or else construct concrete or granite walls, arched over, through this opening of twelve feet wide, and of height sufficient to give a clearance of at least twelve feet, which reconstruction of the defendant in error's road-bed at that point, a work of months, would, according to evidence in the record practically uncontradicted, impose upon defendant in error an expense of from $3,800 to $4,000, to say nothing of the possible increase of danger

or inconvenience resulting from the reconstruction of its road-bed or the change of its character at that point.

W. H. Talley, a civil engineer, testifying for plaintiff in error, does say that he made an estimate of the cost of the construction of the under-crossing required by the commissioners' report, and ascertained that it would be less than the witnesses for defendant in error estimated it; but, besides admitting that he was inexperienced in the work of constructing a railroad, he produced no figures showing how he arrived at his estimate of the cost, and refused to do so.

It is earnestly argued for plaintiff in error that, with his road through depression No. 2 stopped up, he is practically denied access to and from his low-grounds, but we are unable to take that view of the evidence in the record. The witnesses for defendant in error testify with unanimity that a surface crossing of the railway is practicable at another point on plaintiff in error's farm, and where he has had a road which he had from time to time used. His own witness, Talley, while saying that the route up the middle depression (No. 2) is the most practicable and convenient route, etc., admits that it is not the only practicable route, and that, while a certain other route would be longer, the grade of the road would be not greater than many of the county roads of Fluvanna, and less than some of them. In fact, only in the argument of counsel and the statements of plaintiff in error himself is it asserted that it is not practicable for him to have a crossing of the railway over which to reach his low-grounds except by the route through depression No. 2. True, to have to use another route than that usually used by him before the railway through his farm was constructed would be attended with inconvenience and some expense in constructing partly another road, and perhaps a bridge across a usually dry ditch; but this inconvenience and expense would not amount to a burden comparable to that he demands be borne by defendant in error, in order that he may avoid such inconvenience and expense. It is also true that plaintiff in error, when told that the plans for the construction of the railroad bed through his farm called for a fill in depression No. 2, said, and thereafter repeated, "I want my crossing," gave notice to the defendant in error to that effect, and gave notice to it that he

would apply for an injunction to prevent the stopping up of his road; but, although defendant in error agreed to and did suspend its work at depression No. 2 for a reasonable time, and waited ten days for the injunction bill to be filed, none was filed. Whereupon the work of filling across depression No. 2 was resumed, and plaintiff in error admits that he made no further objection to the work going on, having decided "to take other proceedings."

Having received, without objection to the confirmation of the report in the condemnation proceedings, the $600.00 the report allowed him, and declining to contest the legal right of defendant in error to proceed with the construction of its road-bed and works on his farm, according to the maps and profiles by which the commissioners were guided in assessing the damages resulting therefrom to him, plaintiff in error assumes the attitude of demanding of defendant in error that it reconstruct its road-bed across depression No. 2, so as to provide for him an under-way crossing of a wagon road, and at a cost to defendant in error amounting to three times the admitted assessed valuation of his whole farm for taxation, including buildings, etc., thereon, and to two-thirds of the value thereof put upon it by himself when offering the property for sale before the railroad was constructed.

While the statute imposes upon a railroad company, whose line of road passes through the lands of any person in this State, the duty to provide proper and suitable wagon-ways across its road-bed from one part of said land to the other, and to keep such ways in good repair, the statute has to receive a reasonable construction, so as to make the remedy commensurate with the right of the land-owner and the mischief intended to be redressed. *Adams* v. *Tidewater Ry. Co.,* 107 Va. 798, 60 S. E. 129.

According to the evidence in this case, there is an established grade crossing but a short distance southeast of the crossing plaintiff in error is now contending for, which crossing he can reach by a reasonably convenient route, which he has sometimes heretofore used, yet he has selected a point for his farm crossing where the cost to defendant in error in its construction would approximate $4,000, while the land to be reached, at his own estimate, is not worth more than $2,500, and his whole farm, buildings included, is valued for taxation at the sum of $1,341.

It further appears that if defendant in error were required to reconstruct its road-bed across depression No. 2, so as to give plaintiff in error a wagon-way up that depression, it would not be a saving to him of more than four or five days of extra work in harvesting his crop on the bottom lands, as that land is only cultivated in corn, and before the construction of the railway through his farm the wagon-way up depression No. 2 was not used more than from seven to ten days during the year.

Clearly, a reasonable construction of the statute imposes upon the party having the right to select his crossing of a railroad right of way the duty to be reasonable, and regard must be had to the convenience of both parties and the cost to be incurred by the party required to construct the crossing.

In *N. & W. Ry. Co.* v. *Tidewater R. Co.*, 105 Va. 129, 52 S. E. 852, the appellant sought to compel the appellee, in the construction of its line of railroad across appellant's line at a given point, to cross overhead or underground, and not at grade, and the opinion by Buchanan, J., says: "It was earnestly insisted by counsel for appellant * * * that the Corporation Commission, in allowing a grade crossing to be made, had not given due consideration to the declared policy of the State in favor of overhead or underground crossings. (Clause 38, sec. 1294–d, Code of 1904.) The change of the policy of the State from grade to overhead or underground crossings, both as to highways and railroads, is an eminently wise one, and should be given full effect 'wherever,' in the language of the statute, 'it is reasonably practicable and does not involve an unreasonable expense, all the circumstances of the case considered.' But to require the establishment of an overhead or underground crossing where it is not reasonably practicable and would involve an unreasonable expense, all the circumstances of the case considered, would be as much against the policy of the State as to permit a grade crossing where those difficulties are not shown to exist. In reaching our conclusion in this case, we have not been unmindful of the provisions of that statute."

The learned counsel for plaintiff in error in this case argue that, while the court has a certain kind of review of the action of the commissioners, it may hear evidence, but it doesn't hear evidence for the purpose of substituting its judgment for theirs, as the

statutes have practically said that "the judgment of the commissioners is better than the judgment of the court in such a matter."

We do not so construe the statute under which this proceeding is had. In none of the cases relied on as supporting the contention has the court, in effect, said more than that the report of the commissioners makes a *prima facie* case, and, if nothing irregular appears on its face, great weight should be given to the judgment of the commissioners; so that while the report of the commissioners in this case, locating the crossing and prescribing its character, made a *prima facie* case, and imposed upon the defendant in error the burden of showing good cause against it, as is not denied, the statute, by express terms, makes the trial court the final arbiter of the propriety of directing the crossing to be constructed. *Adams v. Tidewater R. Co., supra.* It would have been a vain thing for the legislature to have made by its enactment the trial court the final arbiter in such a case, and so worded the statute that it would have been susceptible of the construction that the court is limited to the power only of determining matters which do not go to the question whether or not good cause has been shown against the confirmation of the commissioners' report.

In this case the trial court heard the witnesses testify, examined the maps and profiles of the defendant in error, exhibited at the hearing, and which were relevant to the issue to be determined, and its order complained of sets forth, in the language of the statute, that good cause had been shown why the reports of the commissioners should not be confirmed.

"The burden is upon the appellant to satisfy this court that there was error to his prejudice in the decree or judgment, and, failing in this, the decree or judgment will be affirmed." *Johnson v. Micheaux,* 110 Va. 595, 66 S. E. 823.

We are of opinion that the judgment complained of here is without error, and, therefore, it is affirmed.

*Affirmed.*