# Richmond

## PENNSYLVANIA RAILROAD COMPANY, LESSEE, ETC. V. J. HAROLD BLACK.

April 8, 1940.

Record No. 2184.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Mears & Mears,* for the plaintiff in error.

*Howard H. Adams,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

In the year 1907, the Cape Charles Railroad Company, lessor of the appellant, acquired by purchase from Jesse S. Williams, a railway right of way across the farm of Williams, known as "Willow Grove", situated in Northampton county and containing 239.24 acres. The right of way, approximately sixty-six feet wide, runs diagonally across the eastern end of the farm and separates the land into two tracts.

The tract on the west side of the right of way contains 236.74 acres, and the tract east of the right of way contains 2.4 acres, upon which there is situated a tenant house.

By deed dated March 23, 1911, Williams conveyed to the Cape Charles Railroad 837/1000 of an acre which was embraced in the 2.4 acre tract and used by the company as a siding to load potatoes, etc. This conveyance contained a

reversion clause, and upon the abandonment by the company of the siding two years ago as a loading point, the land reverted to Williams.

In October, 1937, appellee purchased the Willow Grove farm from W. L. Williams, a son of Jesse Williams, for the sum of $23,750, and since his purchase, has placed improvements thereon at a cost of $12,878, and has constructed a new farm road parallel with and to the north of the old road used as a wagon-way by Jesse and W. L. Williams, leading from the home of appellee to the right of way of appellant adjoining the 2.4 acre tract. The State highway borders upon this tract for its entire length, which is triangular in shape, and runs in a straight course diagonally across the railroad at a point approximately one hundred and sixty feet distant from the apex of the 2.4 acre tract, this being the public crossing now used by appellee for ingress and egress to the major portion of his farm. In order to reach the 2.4 acre tract from the main tract, it is necessary to cross the right of way at the public crossing and then continue on the State highway for a distance of one hundred and sixty feet before ingress to the lot is available. In order to cultivate or improve this 2.4 acres, it is necessary to convey all heavy farm machinery, such as harrows, drags and tractors over the highway in wagons or trucks, since to run or drag the machinery over the highway is a violation of the rules and regulations of the State Highway Commission, article 11, sections 1, 3 and 4.

Prior to the filing of his petition in the instant case, appellee applied to the appellant for the establishment of a wagon-way over its right of way in order to connect the east and west tracts of his lands. This request was refused by appellant. Thereupon, appellant and appellee, on the 1st day of June, 1938, entered into an agreement in writing, and under the terms of the lease appellee was granted, rent free, a right of way over the lands of appellant to the 2.4 acre tract of land. This contract, however, contained a clause: "That either party hereto shall have the right to terminate this agreement at any time upon giving notice in

writing, by legal service, to the other that upon the expiration of thirty (30) days from the time of giving the said notice this agreement shall forthwith cease and terminate, and the party of the second part shall thereupon cease exercising the said privilege and deliver possession of the premises in as good order — and condition as when received; * * * ." Becoming dissatisfied with this arrangement, appellee again applied for a wagon-way connecting the east and west tracts of his lands. This application was refused by appellant, and thereupon, appellee filed his petition for the establishment of a wagon-way connecting said lands, pursuant to the provisions of section 3883 of the Code.

The relevant part of that section is as follows:

"It shall be the duty of every public service corporation whose road, canal, or works, passes through the lands of any person in this State, to provide proper and suitable wagon-ways across said road, canal, or other works, from one part of said land to the other, and to keep such ways in good repair. Such ways shall be constructed on the request of the landowners, in writing, made to any section master, agent or employee of such company, having charge and supervision of the railroad, canal, or other works at that point, and shall designate the points at which the wagon-ways are desired * * * ."

In conformity with the terms of the statute, the trial court appointed three commissioners, who "after being first duly sworn for the purpose, shall go upon the land, and determine whether the crossing or wagon-way * * * should be constructed." In due season the commissioners filed their report, the pertinent part of which reads:

"Thereupon your commissioners conclude and determine that the crossing or wagon-way asked for by the said J. Harold Black should be constructed by the Pennsylvania Railroad Company, same to be twenty feet (20 ft.) wide and to run due East from a certain pine tree in the corner of said J. Harold Black's woods, approximately one hundred and seventy feet (170 ft.) North of the public cross-

ing; such construction to be at grade and in the usual and customary manner, so as to afford convenient passage.

"Your commissioners deem the construction of said crossing or wagon-way necessary so as to make it accessible for said J. Harold Black in reaching his land on the East side of the railroad tracks without having to enter the public highway with his tractors, implements, etc., as he now is forced to do, and secondly, to eliminate a certain danger now existing of having to enter the public highway, one side of which is partially obstructed by shrubbery in a certain private yard to the South of the present public crossing."

Appellant filed exceptions to the report, and thereupon, the evidence in support of and against confirmation of the report was heard *ore tenus* by the court. Upon the conclusion of the evidence, the court entered an order establishing a wagon-way twelve feet wide, instead of twenty feet wide as reported by the commissioners. It is this order which is here challenged by the appellant.

The evidence relative to the necessity and cost of the wagon-way is in sharp conflict. The evidence in regard to the hazard reported by the commissioners is likewise in conflict, and also the evidence as to the value of the 2.4 acres after certain contemplated improvements have been placed thereon. There is no dispute as to the value of the land for farming purposes, the value thereof being placed at one hundred dollars per acre.

The appellant's engineer, John Otto, Jr., basing his computation on the construction of a wagon-way twenty feet wide, testified that the cost would be $199.01, and itemized the cost as follows: "20 cubic yards cut at $1.00 a yard $20.00; 48 feet 12 inch cast iron pipe at $1.64 a foot $78.92; labor placing pipe $25.00; labor placing 50 cubic yards of cinders at 50c a yard $25.00; truck hire 16 hours at $2.00 $32.00, total $180.92; engineers and contingencies 10%, making $199.01."

K. R. Vought, superintendent of the Cape Charles division, testified that in his opinion a private crossing was

unnecessary, and further stated that the crossing at the point designated in the report of the commissioners would be more hazardous than the public crossing now in use, and estimated the cost of construction to be $199.

The appellee testified that the plans and specifications submitted by appellant are not in conformity with the usual construction of the private crossings now in use on the Cape Charles railway. He further testified that he did not accept the terms of the agreement of June 1, 1938, as a final adjustment of the controversy and accepted the offer of appellant, as he "couldn't come out no other way;" that in order to transport his heavy farm machinery from the west portion of his land to the east portion, it was necessary to do so by means of trucks or wagons; that the 2.4 acre tract of land bordered the highway; that it was his intention to cultivate the land and beautify same and thus add to the value of his estate; that he had been offered $500 for the 2.4 acre tract; that he valued the same for all purposes at $1,000; that the use of the present method of ingress and egress was most hazardous, for the reason that when the public crossing is reached the view of a train approaching from the north is somewhat obscured because of an existing curve; that, in his opinion, it would cost approximately $10 to construct the ordinary private crossing; that the establishment of the proposed crossing is necessary to the use of the 2.4 acre tract and would afford a less hazardous way to the State highway; that his investment in the "Willow Grove" farm amounts to the sum of $36,628.

George H. Badger, a witness called by appellee, testified that he was the county surveyor for Northampton county; that he made a survey of the crossing involved; that the distance from the public crossing to the proposed crossing is approximately 200 feet from center to center; that, in order to cultivate the 2.4 acre tract of land, it would be necessary to travel 106 feet over the public road with his machinery before reaching same; that the elevation of the center of the proposed crossing is about two and a half feet, that in constructing the crossing it would require the ex-

cavation of 8½ cubic yards of earth; that the entrance to the public crossing now in use is partially obstructed by the shrubbery in a private yard nearby and that when the foliage is on the hedge, it "obstructs everything"; that the traffic upon the highway, which is considerable, renders the present public outlet more hazardous than the proposed crossing would render it for the reason "that you are back to the train if you are coming out from Mr. Black's until you get to the right of way. You are crossing the railroad at the same time you are crossing the public road, making it more hazardous than if you crossed the railroad and then took the other crossing later. You wouldn't have to look after but one thing, and there you have to look after the public road as well as the railroad, because it is at the same place."

Kemper Goffigon, Jr., a member of the board of supervisors, testified in substance that it was impractical to cultivate the 2.4 acre tract under the present conditions; that if the land were improved and made attractive, it would add a thousand dollars or more to the value of the farm. In answer to the question: "Would it be more or less hazardous from the railroad point of view to give Mr. Black the proposed crossing?" witness said: "Well, in my judgment it would be less hazardous to, due to one fact, and that fact is you would only be crossing the railroad at that point. That is the only thing you would have to look out for is trains, and at the present crossing he not only has to watch the railroad track, but the State Highway traffic."

W. R. Goffigon, a witness on behalf of appellee, stated that he was a farmer and acquainted with the "Willow Grove" farm; that the establishment of the proposed crossing and the contemplated improvement of the 2.4 acre tract would add a thousand dollars to the value of the farm; that the fact that appellee now has to cross the highway and railway at the same time renders the present public crossing more hazardous than the proposed crossing.

Charles Gibbs testified that the present value of the 2.4 acre tract, including the tenant house thereon was $800;

that in his opinion it would cost $10 or $12 to construct a wagon-way across the railroad track at the point in issue.

██ The trial court had the advantage of seeing the witnesses and hearing them testify, of examining the maps and estimates filed, and therefore, the action of the court in resolving all conflicts in the evidence in favor of the appellee is entitled to great weight. Under the plain mandate of section 3883, the "trial court is the final arbiter of the propriety of directing the crossing to be erected." *Lanford* v. *Air Line Ry. Co.*, 113 Va. 68, 79, 73 S. E. 566. It follows, therefore, that unless the judgment is contrary to law, it should be affirmed.

This court, construing section 1294b, cl. 2, of the Code of 1904 (now section 3883 of the present Code), in the principal case of *Lanford* v. *Air Line Ry. Co., supra,* said:

"While the statute imposes upon a railroad company, whose line of road passes through the lands of any person in this State, the duty to provide proper and suitable wagon-ways across its roadbed from one part of said land to the other, and to keep such ways in good repair, the statute has to receive a reasonable construction, so as to make the remedy commensurate with the right of the landowner and the mischief intended to be redressed. *Adams* v. *Tidewater Ry. Co.*, 107 Va. 798, 60 S. E. 129." Counsel for appellant strongly rely upon the law and facts of that case as controlling the case at bar.

This contention is untenable, for the reason that the facts are entirely different, and the question of law involved is not the same. The facts are set forth in the opinion as follows:

"In this case the report of the two commissioners, which the circuit court refused to confirm, required that defendant in error excavate an opening through its road-bed, build two walls eighteen feet high, twenty feet wide at the top and eighty-two feet wide at the bottom, then fill back behind the walls and bridge across the opening, or else construct concrete or granite walls, arched over, through this opening of twelve feet wide, and of height sufficient to give a

clearance of at least twelve feet, which reconstruction of the defendant in error's road-bed at that point, a work of months, would, according to evidence in the record practically uncontradicted, impose upon defendant in error an expense of from $3,800 to $4,000, to say nothing of the possible increase of danger or inconvenience resulting from the reconstruction of its road-bed or the change of its character at that point. * * * while the land to be reached, at his own estimate, is not worth more than $2,500, and his whole farm, buildings included, is valued for taxation at the sum of $1,341."

The question of law involved was the arbitrary right of Lanford to require the company to construct an under-way wagon road connecting his two tracts of land separated by the right of way of the company. In disposing of the question, Judge Cardwell said:

"It is manifest that in the beginning, and throughout this whole controversy, plaintiff in error has proceeded upon the erroneous theory that the statute gives him the arbitrary right to demand and have of the defendant in error, not only an under-way wagon road, crossing from one part of his farm to the other, but at the point he designates, and without regard to the costs thereby imposed upon the defendant in error, or whether the inconvenience and expense to him in having to take and use a grade crossing of the railroad's right of way, at another point on his farm, would be much or little.

"The statute admits of no such construction, even if it were clear that it contemplates that a railway company can be required to construct an under-way crossing to give access from one part of a farm to another, where a farm is divided by the road-bed constructed through it. It is very clear that the statute contemplates that the way is to be constructed readily and quickly. It does not, as plaintiff in error contends, merely provide that the railway company, when the land-owner requests a farm crossing, shall, within ten days, agree to construct it; but provides: 'If the company fail or refuse, for ten days after such request, to con-

struct wagon-ways of a convenient and proper character, at the places designated, then the owner may' institute legal proceedings to require the company to construct such ways as he has designated. The statute does not impose upon a railway company the duty to 'provide a crossing', but to provide proper and suitable 'wagon-ways across' the railroad right of way, and the words, 'wagon-ways across' appear significant, especially so when the statute is read along with clause 3 of section 1294b, ch. 54-A, of the Code, which latter section deals with the crossing of one railroad by another, and uses the word 'crossing' only, and that section has been construed by this court to require no more than a surface crossing."

In the instant case, no onerous burden is laid upon appellant in requiring it to construct not a public crossing at a cost of $199.01, but a wagon-way similar to "wagon-ways of like character on the Cape Charles Railroad," at an estimated cost of $109.

In *Adams* v. *Tidewater Ry. Co.*, 107 Va. 798, 60 S. E. 129, Code section now 3883 was construed and this doctrine was announced: "This remedial statute ought to receive a reasonable construction, so as to make the remedy commensurate with the rights of the landowner and the mischief intended to be redressed, and should not be suffered to fall short of its admitted purpose by a too narrow interpretation."

The right of the landowner to have a wagon-way constructed connecting lands separated by a railway right of way, when it is reasonably possible to do so, must be conceded, in view of the plain terms of the statute. "The mischief intended to be redressed" in the instant case is palpable, and this language in the Adams case is apposite: "The right of way divides the farm into two parts. It (the right of way) is the property of the railroad company and the landowners have no right to cross it, except by permission. They must, therefore, remain at the mercy of the company, so far as ingress and egress from one part of the

farm to the other is concerned, until suitable crossings have been established."

While it is true that appellee has at the present time a contract right to pass over the land of appellant in order to reach the 2.4 acre tract of land from the west side, this right can be abrogated by appellant upon giving the appellee thirty days notice to vacate the premises. This may or may not be a pleasant contingency for appellee to contemplate.

The judgment of the trial court will be affirmed.

*Affirmed.*