# Richmond

## Charles William Hurt v. Southern Railway Company.

April 25, 1966.

Record No. 6134.

Present, Eggleston, C. J., and Buchanan, Snead, I'Anson, Carrico and Gordon, JJ.

*Carl E. Hennrich* (*George Gilmer*, on brief), for the appellant.

*H. Merrill Pasco* (*Jack Spain, Jr.*; *Hunton Williams, Gay, Powell & Gibson*, on brief), for the appellee.

BUCHANAN, J., delivered the opinion of the court.

In an amended bill for an injunction filed in January, 1964, the plaintiff, Charles William Hurt, alleged that he was the owner of the unsold part of a tract of land in Albemarle county lying on both sides of the railroad track of the defendant, Southern Railway Company, a short distance north of Rio station, which had been conveyed to him in 1958; that the part of the land lying east of the track had no outlet except across the defendant's right of way; that the defendant for many years had maintained two suitable and proper crossings over its tracks for this land, but about a year ago it had taken up one set of tracks and destroyed the crossing over the other, and had not complied with repeated demands that it restore the crossings.

The bill prayed that the defendant be required forthwith to construct and maintain the crossings at their old locations and to pay damages for its failure to do so after being requested.

Defendant in its answer admitted that the crossings requested by the plaintiff had once existed, but asserted that they had been abandoned for many years; that they were dangerous and the plaintiff had other and safer access to his land over land in which he owned a half interest; that if the defendant was entitled to any crossing it would be the southern one, which was the safer, and this should be restricted to the private use of the plaintiff.

The court heard the evidence *ore tenus* and entered the decree appealed from ordering the defendant to repair and maintain both of said crossings in their original locations; but that the use of both crossings by the plaintiff be limited to ordinary private access to the land on the east side of the railroad, "including the right to take sand therefrom for the use of the owner of the land."

The plaintiff assigned error to this limitation on the use of the crossing for the removal of sand, and to the court's refusal to allow

damages. The defendant assigned cross-error to the requirement that it construct two crossings instead of one.

There was little conflict in the evidence and such as existed is now to be resolved as determined by the trial court. *Darden* v. *Lee Company*, 204 Va. 108, 113, 129 S.E.2d 897, 900.

The plaintiff, Hurt, purchased the tract of land in January, 1958, at which time there were two private crossings over the railroad right of way which at that point ran generally north and south and carried two sets of tracks. There were extra ties and gravel on these crossings, making easy passage for a truck. The right of way was fenced and there was a gate on each side of each crossing.

After plaintiff acquired the property he used the south crossing in dry weather from time to time to haul sand and in connection with a dump area. This use continued until the defendant, in 1962, removed one set of the double tracks and fenced up the crossings.

These crossings were originally used in connection with farming the land, and corn, wheat and other products were hauled over them. A witness who helped with the farming testified that he worked on the land about 1942 and these crossings were old at that time. Another who worked on the railroad during the first world war said these two crossings looked like they were being used then. There was evidence that there was no practical way for getting sand out of the bottom land on the east side of the railroad other than by taking it across the railroad tracks.

In support of his claim for damages resulting from closing the crossings, the plaintiff testified that he had to move stumps across town to the city dump, "I think about a hundred loads at about $2.00 a load"; that he was not able to use any more sand from his property for road construction work with respect to which he said, "We could have used about $700.00 of business per month, at a savings of two-thirds the cost of what we pay for gravel, in the neighborhood of $500.00 a month." An additional claim was expressed this way: "Well, we had a parking area for the Moose Home, about an acre. And that would have saved us a thousand dollars to have been able to use the sand instead of the crushed gravel dust."

Quite obviously these generalities and speculations provided no sufficient basis for the allowance of a specific amount of damages and there was no error in the action of the court in this respect.

The defendant contends, as stated, that the court erred in requiring it to repair and maintain two crossings instead of only one.

Its objection is to maintaining the north crossing. This crossing gives access to a tract of five acres on the west of the railroad and at the north end of a subdivision made by the plaintiff. There is no sand on this five-acre tract, according to the evidence, but this north crossing is the only reasonable way of entering it from the land on the east. We find in the record no sufficient ground for changing the holding of the court that the north crossing should be maintained.

The only question in the case that gives concern is the limitation on the right to take sand over the crossings only "for the use of the owner of the land." The solution of the question lies in applying the provisions of § 56-16 of the Code to the evidence in the case. That section provides in relevant part as follows:

"Every public service corporation, whose road * * passes through the lands of any person in this State, shall provide proper and suitable wagon ways across such road * * from one part of such land to the other, and shall keep such ways in good repair. * *"

The statute originated in Acts 1836-1837, ch. 118, p. 108, which contained a provision not materially different from the quoted part of the present Code.[1]

It has been considered in several cases,[2] none of which however dealt specifically with the principal issue now presented, i.e., whether the plaintiff may haul sand over the crossing only for his own use.

In *Adams* v. *Tidewater R. Co.*, (Note 2), it was said that this remedial statute (then § 1294b (2), Code 1904) "ought to receive a reasonable construction, so as to make the remedy commensurate with the right of the land owner and the mischief intended to be redressed, and should not be suffered to fall short of its admitted purpose by a too narrow interpretation."

In *Lanford* v. *Virginia Air Line Ry. Co.*, (Note 2), it was repeated that the statute should receive a reasonable construction. Applying

---

[1] "Whenever, in the construction of any rail-road, it shall be necessary to cross or intersect any established road or way, it shall be the duty of the president and directors so to construct their rail-road across such established road or way as not to impede the passage or transportation of persons or propety along the same. And where it shall be necessary to pass through the land of any person, it shall be their duty to provide for such person, and keep in proper repair, proper wagon ways across their rail-road from one part of his land to another * *."

[2] *Adams* v. *Tidewater R. Co.*, 107 Va. 798, 60 S.E. 129; *Lanford* v. *Virginia Air Line Ry. Co.*, 113 Va. 68, 73 S.E. 566; *Gaulding* v. *Virginian Ry. Co.*, 121 Va. 19, 92 S.E. 832; *Washington-Virginia Ry. Co.* v. *Fisher*, 121 Va. 229, 92 S.E. 809; *Pennsylvania R. Co.* v. *Black*, 175 Va. 256 8 S.E.2d 291; *Southern Ry. Co.* v. *Anderson*, 203 Va. 991, 128 S.E.2d 429.

it the court refused to require the railroad company to reconstruct its road bed so as to provide the landowner with an underpass at a cost out of proportion to the landowner's need.

*Gaulding* v. *Virginian Ry. Co.*, (Note 2), was a suit for damages for failure of the railroad company to keep in good repair the crossing it had constructed. It was held that the declaration stated a good cause of action since "The duty to keep in good repair necessarily began when the duty to construct ended."

No question is raised as to the right of the landowner to use trucks for hauling across "the wagon ways". *Wagoner* v. *Coal Corp.*, 199 Va. 741, 744, 101 S.E.2d 627, 629; Black's Law Dict., (3d ed.), p. 1827.

The statute requires the construction of proper and suitable wagon ways from one part of the owner's land to the other. It does not require construction of a way to a public road, and plainly does not contemplate that kind of crossing. Its purpose is to lessen the difficulties of the owner in the convenient and profitable use of his land when the railroad divides one part of it from the other. The normal farming operation involves the sale or the use of the products of the farm, such as grain, hay or livestock. It may also include the sale or other use of trees grown on the land and lumber therefrom. Ways "proper and suitable" required by the statute are ways proper and suitable for the reasonable use of the land and the use or sale of its products.

The limitation of the use of the crossing to hauling sand for plaintiff's own use is, we think, too narrow a limitation. It may be construed to mean only sand for his personal use, not sand that he would sell to another. It is a limitation that could render worthless what may be a valuable element of the land, just as such a restriction applied to grain or other products of the soil could render them valueless.

The proper and suitable wagon ways required by the statutes were not intended to be public crossings. They are in the nature of private easements attached to the land for the reasonable use of the owner. Such use does not include the right to haul over the crossings the products of a commercial enterprise. Nor should it include a use that would create a dangerous condition at the crossings and unreasonably interfere with the operation of defendant's trains. This involves the volume of traffic over the crossings rather than the use and disposition of what is hauled.

The division engineer of the defendant testified that 26 scheduled

trains a day were operated over these crossings, about fourteen of which crossed in the daytime, and that no safety precautions are required for private crossings. At the southern crossing, which is the one that will be used for hauling sand, the sight distance to the north from the east side of the crossing is 1140 feet, and to the south 1900 feet. From the west side the sight distance to the north is 1070 feet and to the south 1930 feet. Plaintiff testified that the prospective purchaser of sand would probably expect to haul ten to twenty truckloads a day over this crossing. Such would clearly be a use in excess of that intended by the statute.

On consideration of the factual situation, and the rights and duties of both the plaintiff and the defendant under the statute, we conclude and hold that the plaintiff has the right to remove over said crossings sand for his own use taken from his property on the east side of the railroad; and the additional right to sell sand from said property to be hauled over said crossings in quantity not to exceed a total of five ordinary truckloads of sand in any twenty-four hour period.[3]

The decree appealed from is modified in the manner stated and as modified is affirmed and the cause is remanded to the trial court with direction to keep the cause on its docket for such future relief as the landowner and the railroad company may show themselves entitled to.

The plaintiff shall recover his costs here and in the trial court.

*Modified and remanded.*

---

[3] We do not consider this conclusion to be in conflict with the holding in *Weiss* v. *Chicago &c., Railroad,* 9 Wis.2d 581, 101 N.W.2d 688, cited by the defendant, which is distinguished by its facts from the present case. *Cf. Cushman Corp.* v. *Barnes,* 204 Va. 245, 253, 129 S.E.2d 633, 639-40.